Citation Nr: 1714110 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 10-12 558 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim for entitlement to service connection for hepatitis C.

2. Entitlement to service connection for an acquired psychiatric disorder, claimed as depressive disorder.

3. Entitlement to service connection for an eye condition, claimed as refractive error and accommodation disorder.

4. Entitlement to service connection for hypertension.

5. Entitlement to service connection for diabetes mellitus, type 2.

6. Entitlement to service connection for degenerative arthritis of the left shoulder, claimed as secondary to the service-connected left shoulder dislocation.



REPRESENTATION

Veteran represented by: Alabama Department of Veterans Affairs


ATTORNEY FOR THE BOARD

J. T. Brant, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 1978 to June 1988.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a May 2008 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

In March 2016, the Board remanded the matter for further development. It is now back before the Board.

The Board notes that the March 2016 remand included the issue of entitlement to service connection for osteoarthritis of the right shoulder, claimed as secondary to the service-connected left shoulder dislocation. However, in a May 2016 rating decision, the RO granted service connection for osteoarthritis of the right shoulder. As this decision represents a full grant of the benefit sought, this issue is no longer before the Board. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997) (noting that a grant of service connection extinguishes appeals before the Board).

As noted in the prior March 2016 Board remand, the issue of entitlement to nonservice-connected disability pension benefits has been raised by the record in the March 2010 VA Form 9, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2016). 


FINDINGS OF FACT

1. An unappealed June 2002 rating decision denied entitlement to service connection for hepatitis C. 

2. The evidence submitted with regard to the claim for service connection for hepatitis C, since the RO's June 2002 decision is cumulative and redundant, and does not relate to an unestablished fact necessary to substantiate the underlying claim.

3. The preponderance of the evidence is against a finding that there is a nexus between an acquired psychiatric disorder, diagnosed as adjustment disorder with depressed mood, and service.

4. The Veteran's refractive error of the eye is a congenital or developmental defect not subject to compensation within the meaning of applicable legislation; there was no superimposed disease or injury during service which created additional chronic disability.

5. The preponderance of the evidence fails to establish that the Veteran's hypertension was initially manifested in service; manifested to a compensable degree within one year of service discharge; or is causally or etiologically related to service.

6. The Veteran is not presumed to have been exposed to herbicides, including Agent Orange, nor is there probative evidence of such exposure.

7. The preponderance of the evidence of record shows that the Veteran did not exhibit diabetes mellitus in service, or to a compensable degree within one year after discharge from service, and there is no such evidence linking it to service. 
8. The preponderance of the evidence is against finding that the Veteran's degenerative arthritis of the left shoulder was initially manifested in service, manifested within one year of service separation, is otherwise etiologically related to service; or was caused or aggravated by the service-connected left shoulder dislocation disability.


CONCLUSIONS OF LAW

1. The June 2002 rating decision, which denied entitlement service connection for hepatitis C, became final. 38 U.S.C.A. § 7105(c) (West 2014).

2. Evidence received since the June 2002 rating decision is not new and material and the claim for service connection for hepatitis C is not reopened. 38 U.S.C.A. §§ 38 U.S.C.A. §§ 5103A, 5107, 5108 (West 2014); 38 C.F.R. § 3.156(a) (2016).

3. The criteria for service connection for an acquired psychiatric disorder, diagnosed as adjustment disorder with depressed mood, have not been met. 38 U.S.C.A. §§ 1110, 1131, 1111, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).

4. Service connection for refractive error of the eyes is precluded by law. 38 U.S.C.A. §§ 1110, 5107; 38 C.F.R. §§ 3.303, 4.9 (2016).

5. The criteria for service connection for hypertension have not been met. 38 U.S.C.A. §§ 1110, 1111, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016). 

6. The criteria for service connection for diabetes mellitus, type 2, have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2016).

7. The criteria for service connection for degenerative arthritis of the left shoulder have not been met. 38 U.S.C.A. §§ 1110, 1111, 1154(b), 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Stegall Concerns 

As noted in the Introduction, the Board remanded the Veteran's claims in March 2016 for additional evidentiary development. In particular, the Board remanded the Veteran's claims to obtain outstanding Social Security Administration (SSA) records pertaining to the Veteran's claim for disability benefits and to contact the Veteran to identify any outstanding records of pertinent medical treatment. With respect to the claims for entitlement to service connection for an acquired psychiatric disorder, claimed as depressive disorder, and osteoarthritis of the left shoulder, the Board instructed the AOJ to obtain VA examinations with etiology opinions.

In April 2016, the AOJ requested that the Veteran identify and authorize VA to obtain any outstanding treatment records pertinent to his claims on appeal. The Veteran identified several outstanding private treatment records, which the AOJ obtained. In April 2016, the AOJ obtained the Veteran's SSA disability records. In April 2016, the AOJ obtained VA examinations for the Veteran's claimed acquired psychiatric disorder and left shoulder disability. The examination reports included all opinions as requested by the Board. The AOJ readjudicated the Veteran's claims in a May 2016 Supplemental Statement of the Case.

Thus, the Board's prior remand instructions have been complied with. See Stegall v. West, 11 Vet. App. 268, 271 (1998) [where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance].


II. The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R. § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate the claim. 

 Duty to Notify

VA's duty to notify was satisfied by letter dated in August 2007. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

 Duty to Assist

VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the claims. Service treatment records, all identified and obtainable post-service treatment records, SSA disability records, and lay statements have been associated with the record. 

With respect to the claim for entitlement to service connection for an acquired psychiatric disorder, as discussed above, pursuant to the Board's March 2016 remand, in April 2016, the Veteran was afforded a VA examination with etiology opinion. The April 2016 examination report contained an etiology opinion as requested by the Board. The RO obtained an addendum opinion later that month. The Board finds that, taken as a whole, the opinions provided were thorough and adequate. See Barr v. Nicholson, 21 Vet. App. 303 (2007). 

With respect to the claim for entitlement to service connection for osteoarthritis of the left shoulder, the Veteran was afforded a VA examination in September 2007. As discussed above, pursuant to the Board's March 2016 remand, in April 2016, the Veteran was afforded another VA examination with etiology opinion. The April 2016 examination report contained all findings as requested by the Board. The Board finds that the April 2016 opinion was thorough and adequate. See Barr v. Nicholson, 21 Vet. App. 303 (2007). 
With respect to the claims for entitlement to service connection for an eye condition, hypertension, and diabetes mellitus type 2, VA is obliged to provide an examination when the record contains (1) competent evidence of a current disability (or persistent or recurrent symptoms of a disability), and (2) evidence establishing that an event, injury, or disease occurred in service, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service, but (4) there is insufficient competent medical evidence on file to decide the claim. 38 U.S.C.A. § 5103A(d); McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). However, in the instant case, the Board finds that other than the Veteran's naked allegations, the record does not indicate that his eye condition, hypertension, or diabetes mellitus type 2 disabilities may be associated with service as there is no evidence of disease or injury in service, recurrent symptoms or continuity of symptomatology since service or other possible association with service. For these reasons, a VA medical opinion is not necessary to decide the claims for service connection for an eye condition, hypertension, or diabetes mellitus type 2. Id. at 81; 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i)(C). 

As the Veteran has not identified any additional evidence pertinent to the claims, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claims is required to comply with the duty to assist.

III. Claim to Reopen - Hepatitis C

In order to reopen a claim which has been denied by a final decision, the claimant must present new and material evidence. 38 U.S.C.A. § 5108. New evidence means existing evidence not previously submitted to VA. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). For purposes of reopening a claim, the credibility of newly submitted evidence is generally presumed. See Justus v. Principi, 3 Vet. App. 510, 513 (1992) (in determining whether evidence is new and material, the "credibility" of newly presented evidence is to be presumed unless the evidence is inherently incredible or beyond the competence of the witness).

The language of 38 C.F.R. § 3.156(a) creates a low threshold for finding new and material evidence, and views the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." Evidence "raises a reasonable possibility of substantiating the claim," if it would trigger VA's duty to provide an examination in adjudicating a non-final claim. Shade v. Shinseki, 24 Vet. App. 110 (2010).

By way of background, in an unappealed June 2002 rating decision, the RO denied entitlement to service connection for hepatitis C, on the basis that there was no evidence showing hepatitis C was incurred in or aggravated by military service. 

At the time of the prior denial in June 2002, the Veteran's service treatment records, personnel records, a VA liver examination dated April 2002, VA treatment records, treatment records from USA Hospital, and lay statements from the Veteran were considered. The service treatment records were void of any diagnosis of hepatitis C. There was evidence of non-reactive hepatitis B exposure only, but no diagnosis of hepatitis B. USA Hospital treatment records for the period of September 2000 through June 2001 showed a diagnosis of hepatitis C and polysubstance abuse. VA outpatient treatment records for the period of May 2001 through April 2002 showed a diagnosis of hepatitis C treated with Interferon and Ribavirin. The April 2002 VA liver examination showed a diagnosis of hepatitis C with a history of intravenous drug abuse. The June 2002 decision found that these records did not demonstrate that the Veteran's hepatitis C was incurred in or aggravated by service. 

Added to the record since the final denial of June 2002 are additional VA outpatient treatment records and private treatment records. 

The additional VA outpatient treatment records showed continued treatment for the Veteran's hepatitis C, however, these records cannot be considered material, in that they do not suggest that such disability was incurred in or aggravated by service. The remaining treatment records do not contain any evidence of treatment related to the Veteran's hepatitis C. As such, the newly submitted medical records cannot be considered material, in that they do not relate to an unestablished fact necessary to substantiate the claim. Thus, the newly submitted medical records are not deemed to be new and material evidence for the purpose of reopening this claim. The Board also finds that the Veteran has not offered any statements in support of his claim that relate to an unestablished fact necessary to substantiate the claim.

As discussed above, the RO initially denied the Veteran's claim because there was no evidence showing hepatitis C was incurred in or aggravated by military service. There has been no medical evidence added to the file since the prior final June 2002 rating decision which would establish that the Veteran's hepatitis C disability was incurred in or aggravated by service. In essence, the evidence added to the record since the June 2002 rating decision does not raise a reasonable possibility of substantiating the claim.

Although the Board is sympathetic to the Veteran's health difficulties, the Board finds that no new and material evidence has been received sufficient to reopen his claim. Until the Veteran meets the threshold burden of submitting new and material evidence sufficient to reopen his claim, the benefit of the doubt doctrine does not apply. See Annoni v. Brown, 5 Vet. App. 463, 467 (1993); see also Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

IV. Service Connection

A veteran is entitled to VA disability compensation if there is disability resulting from personal injury suffered or disease contracted in line of duty in active service, or for aggravation of a preexisting injury suffered or disease contracted in line of duty in active service. 38 U.S.C.A. § 1110. 

Generally, to establish a right to compensation for a present disability, a veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished by affirmatively showing inception or aggravation during service. 38 C.F.R. § 3.303(a). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). An alternative to showing chronicity in service is a showing of continuity of symptoms after discharge. The U. S. Court of Appeals for the Federal Circuit (Federal Circuit), however, clarified that this notion of continuity of symptomatology since service under 38 C.F.R. § 3.303(b), which is an alternative means of establishing the required nexus or linkage between current disability and service, only applies to conditions identified as chronic under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Service connection may also be established with certain chronic diseases, such as diabetes mellitus type 2, hypertension, and arthritis, based upon a legal presumption by showing that the disorder manifested itself to a degree of 10 percent disabling or more within one year from the date of separation from service. Such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumptive period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Alternatively, if a veteran was exposed to a herbicide agent during active military, naval, or air service, certain diseases shall be service connected if the requirements of 38 U.S.C.A. § 1116 and 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e). Such diseases include, among others, Type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes). Id. 

Service connection may be granted for a disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d).

In general, service connection may not be granted for congenital or developmental defects, as they are not considered a disease or injury for the purpose of service connection. See 38 C.F.R. § 3.303(c), 4.9 (2016). For VA purposes, a "defect" is defined as a structural or inherent abnormality or condition which is more or less stationary in nature, and is generally incapable of improvement or deterioration. In addition, service connection may be granted for any additional disability that results where a congenital or developmental defect is subject to, or aggravated by, a superimposed disease or injury. See VAOPGCPREC 82-90 (July 18, 1990); VAOPGCPREC 67-90 (July 18, 1990).

Acquired Psychiatric Disorder

The Veteran is seeking to establish service connection for an acquired psychiatric disorder, claimed as depressive disorder. 

In the Veteran's January 1978 enlistment examination, his psychiatric evaluation was normal. The Veteran's service treatment records revealed one psychiatry consultation dated in April 1983 as a result of the Veteran testing positive for cocaine. In the consultation, the Veteran admitted to years of cocaine and heroin use. He also admitted to using hashish and marijuana in the past. The physician noted that during the interview, the Veteran was distant; appeared amused; smiled inappropriately; and answered tangentially. The provisional diagnosis was narcotic abuse, chronic (no evidence of physiologic addiction). The impression was polydrug abuse by history. In a September 1985 reenlistment examination, the Veteran's psychiatric evaluation was normal. In the Veteran's June 1988 separation examination, his psychiatric evaluation was normal.

VA treatment records beginning in 2001 revealed that the Veteran was admitted to the early intervention program with an addiction therapist. The Veteran reported that he had been treated on one occasion for alcohol and drug abuse. He denied ever being treated for psychological or emotional problems. The Veteran reported having experienced psychological or emotional problems on 10 days during the past 30 days. He reported experiencing serious depression (30 days and lifetime) and trouble controlling violent behavior (lifetime). He denied ever being prescribed medication for psychological or emotional problems. Following a psychological evaluation in March 2001, the Veteran was diagnosed with mood disorder due to medical condition with depression. Subsequent VA treatment records note diagnoses of mood disorder due to Hepatitis C with depression, depression not otherwise specified, cocaine abuse, alcohol abuse, and substance-induced mood disorder. The Veteran has received mental health treatment off and on since 2001. He stopped receiving treatment in 2008.

SSA records show the Veteran has been on disability since 2001 for liver cirrhosis, affective mood disorder, and other medical problems.

Pursuant to the March 2016 Board remand, in April 2016, the Veteran was afforded a VA examination. The examiner diagnosed adjustment disorder with depressed mood. The examiner noted that the Veteran's chronic medical problems were relevant to the understanding or management of the diagnosed mental health disorder. The Veteran denied receiving mental health treatment prior to service. He reported that he attended alcohol rehabilitation treatment while in service. The examiner noted that in the early 2000's, the Veteran had mental health treatment for depression when being treated for hepatitis C. The examiner noted that the Veteran was diagnosed with "mood disorder due to medical illness (hepatitis and interferon)." The examiner noted that in 2005, the Veteran came back to VA mental health. At this time, he denied drinking for the last 15 days. He reported that he had been drinking six to eight cans of beers per day since the age of 12. He reported cocaine use one week ago, noting that he had been using cocaine since 1983. He reported that in 2008, he was court-ordered to rehab and domestic violence treatment after being charged with making a terrorist threat towards his sister. He denied any mental health treatment since 2008. 

The examiner noted that the Veteran endorsed moderate symptoms of depression with primarily somatic symptoms, including loss of appetite and fatigue. He attributed this primarily to his gastrointestinal problems. The examiner noted that the Veteran was referred to drug rehab during service, at which time he reported that when enlisting he was not forthcoming about his drug use, which began in the ninth grade. The examiner noted that the psychiatric evaluation dated in April 1983 noted that there was no indication of any other psychiatric disorder other than polysubstance abuse. The examiner indicated that the Veteran did not engage in any other type of mental health treatment after service until the early 2000's, when being treated for a "mood disorder due to medical illness (hepatitis and interferon)." The examiner found that the Veteran's currently diagnosed adjustment disorder with depressed mood was related to his distress and depressed mood related to his chronic medical problems. The examiner opined that it was less likely that the Veteran's current diagnosis of adjustment disorder was related to any events or treatment he received during service.

In an addendum opinion dated in April 2016, the examiner again opined that it was less likely that the Veteran's current diagnosis of adjustment disorder was related to any events or treatment he received during service. She noted that the Veteran was referred to drug rehab during service, at which time he reported that when enlisting he was not forthcoming about his drug use which began in the ninth grade. The examiner found no established link between the Veteran's current adjustment disorder and his history of cocaine abuse. She noted that the Veteran did not engage in any other type of mental health treatment after service until the early 2000's, when he was treated for a "mood disorder due to medical illness (hepatitis and interferon)." She again noted that the Veteran's depression was not due to his in-service treatment for drug abuse. The examiner noted that the Veteran has not had any mental health treatment since 2008, at which time he was court-ordered to attend rehab and domestic violence treatment after being charged with making a terrorist threat towards his sister. The examiner indicated that once again, this treatment was unrelated to his in-service treatment for drug use. 

The examiner noted that during the evaluation, the Veteran reported that his current symptoms of depression started when he began experiencing chronic hiccups, vomiting, and nausea in 2000. Thus, she found that his reported chronicity of symptoms did not indicate that his depression was associated with any in-service treatment or events. The examiner found that the Veteran's currently diagnosed adjustment disorder with depressed mood was related to his distress and depressed mood related to his now chronic medical problems.

When considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that service connection for an acquired psychiatric disorder, diagnosed as adjustment disorder with depressed mood, is not warranted.

The Veteran has been diagnosed with adjustment disorder with depressed mood. Accordingly, as there is a current acquired psychiatric disorder, the first Shedden element of service connection is satisfied. However, a veteran seeking disability benefits must establish not only the existence of a disability, but also an etiological connection between his active duty service and the disability. 

The Board finds that the weight of the evidence is against a finding that the Veteran's current acquired psychiatric disorder is etiologically related to the Veteran's active duty service. 

In reaching this conclusion, the Board has considered the lay evidence offered by the Veteran to VA. This includes his statements, in which he asserted his belief that his acquired psychiatric disorder is related to his service. In general, lay witnesses are competent to testify as to their observations as well as opine on questions of diagnosis and etiology in some circumstances. See Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (lay witnesses are competent to testify as to their observations, but this testimony must be weighed against the other evidence of record); Barr v. Nicholson, 21 Vet. App. 303 (2007) (lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation). See also Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (Board's categorical statement that "a valid medical opinion" was required to establish nexus, and that a layperson was "not competent" to provide testimony as to nexus because she was a layperson, conflicts with Jandreau; lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology). 

The Board has carefully considered the Veteran's lay assertions. The Board acknowledges that a layman is competent to report what he or she experiences through one of the senses. See Layno v. Brown, 6 Vet. App 465, 470 (1994). However, while the Veteran is competent to report psychiatric symptoms such as depressed mood, the diagnosis of adjustment disorder with depressed mood, requires that a person be qualified through education, training, or experience to offer a medical diagnosis. For this reason, his acquired psychiatric disorder, diagnosed as adjustment disorder with depressed mood, is not a simple medical condition and the Veteran is not competent to render a diagnosis. Furthermore, the determination as to the etiology of adjustment disorder with depressed mood requires specialized training for a determination as to causation, and is therefore not susceptible of lay opinion. See 38 C.F.R. § 3.159. Here, there is no competent evidence or opinion even suggesting that there exists a medical nexus between a current acquired psychiatric disorder and the Veteran's active duty service. In fact, the only medical opinion addressing the etiology of the acquired psychiatric disorder weighs against the claim. Accordingly, the Board has placed greater probative weight on the conclusions reached by the April 2016 VA examiner, who, as a licensed psychologist, is competent to render opinions regarding medical matters. 

The Board finds that the April 2016 opinion offers the strongest and most persuasive opinion and rationale regarding the etiology of the Veteran's acquired psychiatric disorder. This examiner reviewed the Veteran's entire claims file and medical history and examined the Veteran. The examiner found that it was less likely that the Veteran's current diagnosis of adjustment disorder was related to any events or treatment he received during service. In formulating her opinion, the examiner acknowledged the April 1983 in-service psychiatry consultation as a result of the Veteran testing positive for cocaine. However, the examiner explained that during this consultation, the Veteran reported that when enlisting he was not forthcoming about his drug use, which began in the ninth grade. The examiner noted that this evaluation found no indication of any other psychiatric disorder other than polysubstance abuse. The examiner indicated that the Veteran did not engage in any other type of mental health treatment after service until the early 2000's, when the Veteran had mental health treatment for depression while being treated for hepatitis C. The examiner noted that the Veteran was diagnosed with "mood disorder due to medical illness (hepatitis and interferon)." The examiner noted that during the evaluation, the Veteran reported that his current symptoms of depression started when he began experiencing chronic hiccups, vomiting, and nausea in 2000. Thus, she found that his reported chronicity of symptoms did not indicate that his depression was associated with any in-service treatment or events. The examiner instead found that the Veteran's currently diagnosed adjustment disorder with depressed mood was related to his distress and depressed mood related to his now chronic medical problems.

The Board also finds that various VA treatment records corroborate the April 2016 VA examiner's opinion that the Veteran's current acquired psychiatric disorder is related to his chronic medical problems, namely his hepatitis C. For example, in the early 2000's, the Veteran had mental health treatment for depression when being treated for hepatitis C. Following a psychological evaluation in March 2001, the Veteran was diagnosed with mood disorder due to medical condition with depression. Subsequent VA treatment records note diagnoses of mood disorder due to Hepatitis C with depression, depression not otherwise specified, cocaine abuse, alcohol abuse, and substance-induced mood disorder. See, e.g., December 2006 VA treatment record.

The Board finds the April 2016 opinion to be adequate and reliable and affords it great probative weight. Moreover, it stands uncontradicted by any other competent opinion of record.

Considering the above, the Board finds that the VA opinion of the April 2016 examiner adequately explains why the Veteran's current acquired psychiatric disorder, diagnosed as adjustment disorder with depressed mood, is most likely due to the Veteran's chronic medical conditions, namely his chronic hiccups, vomiting, and nausea as a result of his hepatitis C. The Board therefore finds that the expert opinion of the VA physician greatly outweighs any opinion of the Veteran regarding the onset and etiology of the Veteran's acquired psychiatric disorder. As discussed, the etiology of the Veteran's acquired psychiatric disorder is a complex medical matter beyond the knowledge of a layperson. Jandreau v. Nicholson, 492 F.3d 1372 (2007). Therefore, whether the Veteran's acquired psychiatric disorder was caused by service requires specialized training for a determination as to causation, and is therefore not susceptible of lay opinion. The VA opinion is highly probative as it reflects the VA examiner's specialized knowledge, training, and experience as to the etiology of the Veteran's acquired psychiatric disorder, as well as consideration of all relevant lay and medical evidence of record. 

In summary, the weight of the evidence does not support a finding that the Veteran's current acquired psychiatric disorder is etiologically related to his active duty service. As a result, service connection is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. As the preponderance of the evidence is against the claim of service connection for an acquired psychiatric disorder, that doctrine is not applicable. 38 U.S.C.A. § 5107(b). 

Eye Condition

The Veteran is seeking to establish service connection for an eye condition, claimed as refractive error and accommodation disorder. 

The Veteran has been diagnosed with refractive error of the eyes. See, e.g., the Veteran's service treatment records and February 2008 VA treatment record. There are no other findings pertaining to any other diagnosed eye condition. In this regard, in a March 2007 VA treatment record, the Veteran reported that he was a welder. He was given a magnetic resonance imaging (MRI) to rule out metal in eyes. The impression was "no acute process." 

The VBA Manual provides guidance on evaluating conditions of the organs of special sense (i.e., the eyes). Refractive errors are defined to include astigmatism, myopia, hyperopia, and presbyopia. See VBA Manual, M21-1, III.iv.4.B.10.d. Generally, refractive errors are not diseases for VA compensation purposes. 38 C.F.R. § 3.303(c); see also 38 C.F.R. § 4.9; see also, e.g., Winn v. Brown, 8 Vet. App. 510, 516 (1996). In the absence of a superimposed disease or injury, service connection may not be granted for refractive errors of the eyes, even if visual acuity decreased in service, as these are not diseases or injuries within the meaning of applicable legislation relating to service connection. Id. Thus, VA regulations specifically prohibit service connection for a refractive error of the eye unless such a defect was subjected to a superimposed disease or injury which created additional disability. See VAOPGCPREC 82-90, 55 Fed. Reg. 45711 (July 18, 1990). 

Therefore, service connection for the Veteran's congenital refractive error cannot be granted as a matter of law. See Winn v. Brown, 8 Vet. App. 510, 516 (1996); Beno v. Principi, 3 Vet. App. 439 (1992). 

Although the Veteran contends that his eye condition, diagnosed as refractive error, is related to his active duty service, the Veteran's service treatment records do not show any diagnosis of, or treatment for, an eye disability or eye injury while in service. The service treatment records revealed that the Veteran wore glasses for a refractive error. However, there is no evidence of any superimposed disease or injury to the Veteran's refractive error condition. 

As such, absent any probative evidence that the Veteran's refractive error was subject to a superimposed disease or injury during service, it is not a disability for purposes of VA disability compensation as it is congenital in nature. 38 C.F.R. § 3.303(c). Thus, service connection for congenital refractive error is denied.

Hypertension

The Veteran is seeking to establish service connection for hypertension.

As noted above, service connection may be granted on a presumptive basis for certain chronic diseases, including hypertension, if such diseases are shown to be manifest to a degree of 10 percent or more within one year following the Veteran's separation from active duty service. See 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016). 

In this instance, however, service connection for hypertension on a presumptive basis is not warranted as the record does not show any clinical findings or diagnoses of hypertension within one year of the Veteran's separation from active duty. In this regard, the Veteran's service treatment records are negative for a diagnosis of hypertension while in service or within one year of discharge from service. The evidence shows an onset of hypertension in or around 2001, which is approximately 13 years after the Veteran's separation from active duty service. Accordingly, service connection for hypertension on a presumptive basis is not warranted. 
The Board also finds that the weight of the evidence is against a finding that the Veteran's hypertension is etiologically related to the Veteran's active duty service on a direct basis. 

With respect to service connection on a direct basis, on the Veteran's service enlistment examination in January 1978, his blood pressure was 112/70. In a reenlistment examination dated in September 1985, the Veteran's blood pressure was 118/78. On his separation examination in June 1988, the Veteran's blood pressure was 130/90. Following a second reading, his blood pressure was 120/68. Although the Veteran's separation examination in June 1988 showed an elevated blood pressure reading of 130/90, his follow-up reading was 120/68. As such, these results do not meet the definition of hypertension under VA's schedule of ratings for the cardiovascular system, which defines hypertension as diastolic blood pressure predominantly greater than 90mm and systolic blood pressure predominantly 160mm or greater. See 38 C.F.R. § 4.104, Diagnostic Code 7101, Note (1). Thus, the Veteran had no in-service evidence of hypertension. Nor does the claims file otherwise include lay evidence of continuity of symptomatology since service, or evidence that a competent medical professional has linked the Veteran's current hypertension to his service. In this regard, the post-service VA treatment records show a diagnosis of hypertension in or around 2001, approximately 13 years after the Veteran's separation from service. 

As the preponderance of the evidence does not show that hypertension was incurred in service, or a medical nexus between the presently diagnosed hypertension and the Veteran's service, service connection for hypertension cannot be granted on a direct basis.

The Board acknowledges the Veteran's assertions that his hypertension is the result of his active duty service. In this regard, in a statement dated in August 2007, the Veteran indicated that most of his medical conditions, to include his hypertension, were present on discharge but only beginning to flare-up. Although lay persons are competent to provide opinions on some medical issues, the specific disability in this case, hypertension, falls outside the realm of common knowledge of a lay person. Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In this instance, therefore, the Veteran as a lay person has not been shown to be capable of making medical conclusions, especially as to complex medical questions, such as a link between his current hypertension and his active duty service. Thus, his statements regarding any such link are not competent. 
In summary, the Veteran's service treatment records do not show hypertension in service. The Veteran did not receive treatment for or a diagnosis of hypertension until 2001, approximately 13 years after service. No medical professional has ever attributed the Veteran's hypertension to his active duty service, nor is the Veteran competent to make such a link. Based on the foregoing, service connection on a direct basis is not warranted.

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for hypertension and the claim must be denied. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2016); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Diabetes Mellitus Type 2

The Veteran is seeking to establish service connection for diabetes mellitus, type 2. 
As an initial matter, the Board notes that although diabetes mellitus, type 2, is a disease presumptively associated with herbicide exposure, the Veteran has not alleged, and the record does not show, that he had service in Vietnam during the Vietnam era or along the DMZ in Korea during the period from April 1968 through August 1971. The Veteran has also not alleged any direct exposure to herbicides during his active duty service. Accordingly, service connection for diabetes mellitus, type 2, is not warranted on a presumptive basis based on exposure to herbicides in service.

Additionally, the Veteran's service treatment records do not include any indication of complaints of, treatment for, or diagnoses of blood sugar problems, or diabetes mellitus in service, and the post-service medical reports do not document any diabetes mellitus findings within the one year presumptive period following separation from service in 1988. Moreover, at the Veteran's June 1988 separation examination, his albumin and sugar levels were within normal limits. 

With respect to service connection on a direct basis, as noted above, there were no findings of diabetes mellitus in the service treatment records, and, the Veteran has not submitted any medical evidence relating his diabetes mellitus to service. Thus, the Veteran had no in-service evidence of diabetes mellitus. Nor does the claims file otherwise include lay evidence of continuity of symptomatology since service, or evidence that a competent medical professional has linked the Veteran's current diabetes mellitus, type 2, to his service. In this regard, the post-service treatment records show a diagnosis of diabetes mellitus, type 2, in or around 2006. See, e.g., March 2006 VA treatment record noting an A1C level of 11.5 with an assessment of diabetes; see also March 2001 VA treatment record noting no diabetes. In the absence of such evidence, service connection may not be granted. 

The Board acknowledges the Veteran's assertions that his diabetes mellitus is the result of his active duty service. In this regard, in a statement dated in August 2007, the Veteran indicated that most of his medical conditions, to include his diabetes mellitus, type 2, were present on discharge but only beginning to flare-up. Although lay persons are competent to provide opinions on some medical issues, the specific disability in this case, diabetes mellitus, type 2, falls outside the realm of common knowledge of a lay person. Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In this instance, therefore, the Veteran as a lay person has not been shown to be capable of making medical conclusions, especially as to complex medical questions, such as a link between his current diabetes mellitus, type 2, and his active duty service. Thus, his statements regarding any such link are not competent. 

In summary, the Veteran's service treatment records do not show diabetes mellitus, type 2, in service. The Veteran did not receive treatment for or a diagnosis of diabetes mellitus until 2006, approximately 18 years after service. No medical professional has ever attributed the Veteran's diabetes mellitus to his active duty service, nor is the Veteran competent to make such a link. Based on the foregoing, service connection on a direct basis is not warranted.

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for diabetes mellitus, type 2, and the claim must be denied. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2016); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Left Shoulder Arthritis

The Veteran is seeking entitlement to service connection for osteoarthritis of the left shoulder. He contends that he developed osteoarthritis of the left shoulder secondary to his service-connected left shoulder dislocation disability. The Board notes that the Veteran is currently in receipt of a 20 percent evaluation for left shoulder dislocation and a 20 percent evaluation for humerus, other impairment of, left upper extremity associated with left shoulder dislocation.

When considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that service connection for osteoarthritis of the left shoulder is not warranted.

In the Veteran's January 1978 entrance examination, his upper extremities were evaluated as normal. An x-ray of the left shoulder dated in August 1983 was negative. A history of recurrent subluxation was noted. In a reenlistment examination dated in September 1985, the Veteran's upper extremities were again evaluated as normal. The Veteran's upper extremities were again evaluated as normal in his June 1988 separation examination, with the exception of a surgical scar noted on the right shoulder. In this regard, service treatment records revealed complaints pertaining to the right shoulder. It was noted that in May 1980, the Veteran injured his right shoulder playing "B/B" in April. The Veteran had a modified Bristow procedure performed in January 1980 due to recurrent shoulder dislocation.

The Veteran filed his initial claim for entitlement to service connection for a bilateral shoulder disability in 2000. On VA examination in June 2002, the Veteran reported that he sustained a bilateral shoulder dislocation secondary to a fall while in service. He reported that he was taken for medical attention and required a closed reduction of the shoulders. He noted that he developed chronic instability of the right shoulder afterwards, with a history of multiple dislocations, and eventually underwent surgery of the right shoulder. He reported that he was a machinist by profession and worked until 2000, at which time he became sick with hepatitis C and cirrhosis of the liver. He reported that his left shoulder dislocated on a couple of occasions while in service. He denied any further episodes of dislocation after discharge. He noted that he had always been somewhat careful with the use of the arm and similar activities aggravated the left arm as do the right. X-ray imaging revealed a previous right shoulder surgery. There was no bone or joint involvement of the right or left shoulder. There was no evidence of arthritis, fracture, dislocation, or bone destruction. The impression was history of bilateral shoulder dislocation, postoperative on the right.

A rating decision dated in June 2002 granted entitlement to service connection for right and left shoulder dislocation, and assigned 20 percent evaluations.

The Veteran was afforded a VA examination in July 2005 for an increased rating claim for the bilateral shoulders. The Veteran reported that his shoulders had worsened with the passage of time, right worse than left. He denied any further dislocations of either shoulder since the time of the last evaluation. He reported that when he was working as a machinist, his shoulders bothered him when he was performing activities such as lifting or carrying. X-ray imaging revealed a screw overlying an old fracture of the right glenoid fossa. There was no significant interval change compared with the April 2002 x-rays. The examiner diagnosed service-connected right shoulder dislocation, postoperative and service-connected left shoulder dislocation.

On VA examination in September 2007, the Veteran reported that he fell while in service in 1979. He reported that he was seen and treated. He noted a closed reduction of both shoulders at that time. He noted that he did well, but had chronic dislocation of the right shoulder and surgery for it in 1979 later in the year. He denied any dislocation since his surgery in 1979. He complained of bilateral shoulder pain on a daily basis. He reported two episodes of left shoulder dislocations since the initial incident in the distant past. X-ray imaging revealed an old healed fracture of the glenoid of the right scapula fixed with a screw and mild post-traumatic degenerative changes of the right glenohumeral joint. X-ray imaging revealed minimal to mild degenerative changes of the acromioclavicular and glenohumeral joints of the left shoulder. The examiner diagnosed status post recurrent dislocations right shoulder, status post modified Bristow Procedure right shoulder, no dislocations since procedure done in 1980, with mild post-traumatic changes noted on radiograph. The examiner diagnosed status post left shoulder dislocation, currently stable, with minimal changes noted on radiograph. The examiner found that it was less likely as not that the degenerative joint disease of the bilateral shoulders was caused by or a result of the bilateral shoulder dislocations in service.

As noted above, pursuant to the March 2016 Board remand, in April 2016 the Veteran was afforded another VA examination for his left shoulder. The examiner diagnosed degenerative arthritis of the left shoulder (2007) and traumatic arthritis of the right shoulder (2006). The Veteran reported a history of dislocating injuries to both shoulders with modified Bristow procedure done on the right shoulder in 1980. The examiner noted that the service treatment records indicated subluxation of the left shoulder during service. The Veteran reported that he was diagnosed with arthritis of the shoulders in about 2005. 
Although the examiner found that the Veteran's right shoulder traumatic arthritis was secondary to trauma to the shoulder consistent with the Veteran's history of recurrent dislocations of the right shoulder, the examiner found that the Veteran's left shoulder degenerative arthritis was less likely than not incurred in or caused by the claimed in-service injury, event or illness, and was not caused by or aggravated by the service-connected left shoulder dislocation. The examiner explained that the Veteran's service treatment records indicated that he was evaluated and treated for subluxation of the left shoulder and not for a dislocation of the left shoulder. The examiner noted that x-rays taken in September 2007 revealed degenerative joint disease of the shoulder affecting the A/C joint and glenohumeral joints. The examiner noted that the Veteran had a history of manual-type labor after leaving service which would have led to changes of degenerative arthritis in the joints. The examiner explained that whereas the right shoulder degenerative joint disease was noted to be post-traumatic, this diagnosis was not given to the findings of the left shoulder. The examiner found that based on a review of the Veteran's medical records, his history, and the examiner's own clinical experience and expertise, the Veteran's left shoulder degenerative joint disease was less likely than not related to the Veteran's service, to include the left shoulder injury therein, nor was the diagnosed degenerative joint disease of the left shoulder caused by or aggravated by the service-connected post-operative left shoulder dislocation.

The Board notes that as a result of the physical findings from the April 2016 examination, in a May 2016 rating decision, the RO granted entitlement to service connection for humerus, other impairment of, left upper extremity associated with left shoulder dislocation, and assigned a 20 percent evaluation.

The Veteran has been diagnosed with degenerative joint disease of the left shoulder. See September 2007 VA examination. Accordingly, as there is a current left shoulder degenerative arthritis disability, the first Shedden element of service connection is satisfied. However, a veteran seeking disability benefits must establish not only the existence of a disability, but also an etiological connection between his service and the disability. 

The Board finds that the competent evidence of record does not demonstrate that the Veteran's diagnosed degenerative arthritis of the left shoulder is etiologically related to the Veteran's service on a direct basis. Here, the Board is placing significant probative value on the April 2016 VA examiner's opinion that the Veteran's left shoulder degenerative joint disease was less likely than not related to the Veteran's service, to include the left shoulder injury therein. The April 2016 examiner adequately explained why the Veteran's currently diagnosed degenerative arthritis of the left shoulder was not related to active duty service using appropriate citation to the service treatment records and the post-service medical evidence. 

In reaching his conclusion, the April 2016 examiner acknowledged the Veteran's treatment for subluxation of the left shoulder in service. In formulating his opinion, the examiner noted that x-rays taken in September 2007 revealed degenerative joint disease of the shoulder affecting the A/C joint and glenohumeral joints. The examiner noted that the Veteran had a history of manual-type labor after leaving service which would have led to changes of degenerative arthritis in the joints. The examiner explained that whereas the right shoulder degenerative joint disease was noted to be post-traumatic, this diagnosis was not given to the findings of the left shoulder. The examiner found that based on a review of the Veteran's medical records, his history, and the examiner's own clinical experience and expertise, the Veteran's left shoulder degenerative joint disease was less likely than not related to the Veteran's service, to include the left shoulder injury therein.

The Board finds the April 2016 opinion to be adequate and reliable, and affords it great probative weight. The Board is particularly persuaded to assign great probative weight to this opinion because the examiner had the entire claims file for review and provided a rationale for his conclusion that was grounded in the evidence of record. Moreover, there is no competent medical evidence to refute the conclusion of the April 2016 examiner or to otherwise establish a link between the currently diagnosed degenerative arthritis of the left shoulder and service. Considering the above, the Board finds that the opinion of the April 2016 examiner adequately explains why the Veteran's current degenerative arthritis of the left shoulder is not etiologically related to service. As such, there is no basis for direct service connection. 
Additionally, as noted in the legal criteria above, under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third service-connection element for certain chronic diseases is through a demonstration of continuity of symptomatology. See Walker, 708 F.3d 1331. Degenerative arthritis is one of the chronic diseases listed under 38 C.F.R. § 3.309. The Board has considered the lay evidence offered by the Veteran. The Board acknowledges that the Veteran has alluded to a continuity of symptomatology of left shoulder pain following the in-service injury. However, the Board also notes that the Veteran is already in receipt of service connection for left shoulder dislocation, as related to the in-service injury and treatment. 

Moreover, the Board finds that there is no medical evidence to support a finding of a continuity of symptoms since service or from within one year of separation from service. In this regard, the service treatment records and post-service treatment records do not support a finding of degenerative arthritis of the left shoulder during service or for many years after service. The evidence establishes that the Veteran was evaluated for left shoulder subluxation in service in 1983 and has been granted service connection for this disability. However, x-ray imaging at this time was negative, and did not reveal any arthritis. Moreover, post-service x-ray imaging in April 2002 also did not reveal any arthritis. In light of the absence of any clinical evidence of left shoulder arthritis during service or for many years following service (almost 20 years), the Board concludes that neither the clinical record nor the lay statements of record establish a continuity of symptomatology with respect to the diagnosed degenerative arthritis of the left shoulder between the Veteran's separation from service in 1988 until 2007, when degenerative arthritis was first shown by x-ray evidence, precluding an award of service connection on this basis. 

With respect to service connection on a secondary basis, the evidence fails to show that the Veteran's degenerative arthritis of the left shoulder, was either caused by or aggravated by his service-connected left shoulder dislocation disability. In this regard, the April 2016 VA examiner noted that x-rays taken in September 2007 revealed degenerative joint disease of the shoulder affecting the A/C joint and glenohumeral joints. The examiner noted that the Veteran had a history of manual-type labor after leaving service which would have led to changes of degenerative arthritis in the joints. The examiner explained that whereas the right shoulder degenerative joint disease was noted to be post-traumatic, this diagnosis was not given to the findings of the left shoulder. The examiner found that based on a review of the Veteran's medical records, his history, and the examiner's own clinical experience and expertise, the Veteran's left shoulder degenerative joint disease was less likely than not caused by or aggravated by the service-connected post-operative left shoulder dislocation.

With respect to secondary service connection, the Board finds the April 2016 opinion to be adequate and reliable, and affords it great probative weight. The Board is particularly persuaded to assign great probative weight to this opinion because the VA examiner had the entire claims file for review and provided a rationale for the conclusion that was grounded in the evidence of record. Moreover, there is no competent medical evidence to refute the conclusion of the April 2016 examiner or to otherwise establish a link between the currently diagnosed degenerative arthritis of the left shoulder and the service-connected left shoulder dislocation disability. Considering the above, the Board finds that the opinion of the April 2016 examiner adequately explains why the Veteran's current degenerative arthritis of the left shoulder was not caused or aggravated by his service-connected left shoulder dislocation disability. As such, there is no basis for secondary service connection.

In this case, the Board ultimately places far more probative weight on the lack of findings of degenerative arthritis of the left shoulder during active duty service, on separation from service, and for almost 20 years after service, and the negative VA medical opinions of record. Given that the most probative opinions are against a finding of a relationship between the currently diagnosed degenerative arthritis of the left shoulder and service or the service-connected left shoulder dislocation disability, the Board finds that service connection is not warranted. 

Finally, as noted above, service connection may be granted on a presumptive basis for certain chronic diseases, including degenerative arthritis, if such diseases are shown to be manifest to a degree of 10 percent or more within one year following the Veteran's separation from active military service. See 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016). 

In this instance, however, service connection for degenerative arthritis of the left shoulder on a presumptive basis is not warranted as the record does not show any clinical findings, diagnoses, or X-ray evidence of arthritis within one year of the Veteran's separation from active duty. Notably, the first radiographic evidence of degenerative arthritis was in 2007, almost 20 years after the Veteran's separation from service. Accordingly, service connection for degenerative arthritis of the left shoulder on a presumptive basis is not warranted. 

In summary, the weight of the evidence does not support a finding that the Veteran's current degenerative arthritis of the left shoulder is etiologically related to a disease, injury, or event in service, to include the Veteran's service-connected left shoulder dislocation disability. As a result, service connection is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. As the preponderance of the evidence is against the claim of service connection for degenerative arthritis of the left shoulder, that doctrine is not applicable. 38 U.S.C.A. § 5107(b). 


ORDER

As new and material evidence has not been received the Veteran's claim of entitlement to service connection for hepatitis C is not reopened, and the appeal is denied.

Entitlement to service connection for an acquired psychiatric disorder, diagnosed as adjustment disorder with depressed mood, is denied.

Entitlement to service connection for an eye condition, claimed as refractive error and accommodation disorder, is denied.

Entitlement to service connection for hypertension is denied.

Entitlement to service connection for diabetes mellitus, type 2, is denied.

Entitlement to service connection for degenerative arthritis of the left shoulder is denied.




____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs