**Jimmy R. WINN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–802.

United States Court of Veterans Appeals.

Argued Nov. 28, 1995.

Decided Jan. 30, 1996.

Michael P. Horan, for appellant.

David W. Engel, Deputy Assistant General Counsel, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; and Michael R. Smalls were on the brief, Washington, DC, for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

HOLDAWAY, Judge:

Jimmy R. Winn appeals an August 10, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service connection for an acquired psychiatric disorder. The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the decision of the Board and remand the matter for readjudication consistent with this opinion.

## I.

The appellant served in the Navy from August 1962 to June 1968. As a teenager the appellant exhibited symptoms diagnosed as chronic schizophrenia, paranoid type, by the family doctor and was treated at the University of Oklahoma with an admitting impression of schizophrenia and onset in 1959. The records of the appellant's preservice psychiatric treatment contain three different diagnoses, including "personality trait disorder aggressive and paranoid personality," "paranoid or depressive neurosis," and "schizophrenia." When the appellant entered the military and completed his medical history form, he did not respond or responded negatively to questions concerning nervous trouble, depression or excessive worry, prior mental hospitalizations, and medical treatment within the previous five years. No mental disorders or defects were noted during the appellant's entry examination, his reenlistment examination, or in a psychiatric examination during his application to diving school which found him "psychiatrically qualified."

After several years of military service, the appellant had disciplinary problems and was separated from service for "immature personality with passive aggressive features." The appellant was not examined by a psychiatrist at discharge, and the statement in the appellant's service medical records of a diagnostic impression of "immature personality with passive aggressive features" was apparently made by a corpsman. The appellant contends he was psychiatrically normal for the first four years of service, and the disciplinary problems leading to his early honorable discharge were caused by either the onset of schizophrenia or the aggravation of preexisting schizophrenia which had been in remission.

The evidence in the record reveals the appellant's long and complex medical history. The appellant has experienced repeated psychiatric hospitalizations and made several suicide attempts. The mental health professionals who have treated the

appellant or reviewed his medical records have offered conflicting opinions as to the proper diagnosis for the appellant's mental condition and when the onset of his condition occurred. The appellant has been diagnosed with various personality disorders, depressive neurosis, manic depressive illness, chronic paranoid schizophrenia, and assorted combinations thereof. The Court notes the appellant has a legal guardian, is deemed incompetent for VA purposes, and was granted a non-service-connected pension for total disability effective 1977.

The record on appeal contains evidence relating to preservice medical treatment from 1959 to 1961, service medical records from 1962 to 1968, and numerous VA and private records dated subsequent to 1973. The record on appeal does not contain medical records for a period beginning after the appellant's discharge in 1968 and ending when he was hospitalized for a self-inflicted gunshot wound in October 1973. The evidence suggests that VA medical records from this time frame may exist. There are statements in the record by the appellant and also by a retired VA nurse that the appellant received inpatient psychiatric treatment at the VA hospital in Long Beach, California, during this period following discharge. The record also contains the names of other persons who can verify the appellant's treatment. There is evidence that he was also treated in Oklahoma for chronic schizophrenia beginning in 1968.

The appellant's claim for service-connected disability has been denied by the Muskogee, Oklahoma, Regional Office (RO) in more than a dozen rating decisions, and the Board of Veterans' Appeals has issued six separate decisions. The appeal before the Court arose from an October 1989 RO decision that no new factual basis had been presented to reopen the denial of service connection for the appellant's acquired psychiatric disorder. Denial was continued by the Board in February 1991. When the February 1991 Board decision was appealed, this Court remanded the matter on January 31, 1992, with instructions that the Secretary locate the missing medical records and consider them on readjudication. The Secretary and the Board failed to comply with that remand order. Although the Board returned the case to the Muskogee, Oklahoma, RO, for a search to locate the missing records, the search was not completed. Instead, the case was returned to the Board, which subsequently issued the August 1993 decision now before the Court.

The August 1993 BVA decision conceded that the appellant had submitted new and material evidence, but denied the appellant entitlement to service connection for an acquired psychiatric disorder. The Board evaluated de novo the weight and credibility of the evidence and concluded that a chronic, acquired psychiatric disorder was not incurred in or aggravated by service, or presumptively incurred during service. Also in that decision, the Board relied on a medical advisor opinion which did not favor the appellant. The appellant was not afforded the opportunity to present evidence challenging the medical advisor's opinion. The appellant filed his Notice of Appeal on August 17, 1993.

## II.

The Secretary concedes in his brief that remand to the Board is necessary.

### A. *Austin* Error

 When a decision by the Board relies on the opinion of a BVA medical advisor, the claimant must be granted a reasonable opportunity to respond to the medical advisor's opinion. *Thurber v. Brown,* 5 Vet.App. 119 (1993). In *Austin,* we held that the claimant must be given notice and allowed to submit comment, argument, and additional evidence challenging an unfavorable medical advisor opinion. *Austin v. Brown,* 6 Vet. App. 547, 550–51 (1994). The appellant was not given the opportunity to present such evidence as the Board decision on appeal was issued prior to our opinion in *Austin.* On remand the appellant shall be afforded the opportunity for comment, argument, and the submission of evidence to respond to the medical advisor opinion.

### B. Duty to Assist

 A remand is also necessary for the Secretary to fulfill his 38 U.S.C. § 5107(a) duty to assist and comply with our January

31, 1992, order granting the Secretary's unopposed motion to remand. Our order incorporated by reference instructions that VA search for "VA inpatient hospitalizations records during the period from 1968–1969 that were likely sent to the Federal Archives and Records Center, Laguna Niguel, California." Our order further stated, "Then after all relevant records have been gathered (or determined not to exist), it is appropriate for BVA to consider all relevant evidence of record and to set forth its reasons or bases for the relevant evidence which it discredits." These records are relevant and probative to the appellant's claim for service connection of an acquired psychiatric disorder, as they may confirm that the appellant was hospitalized for schizophrenia shortly after discharge.

Despite the specific instructions given by the Court in the January 1992 order, the Muskogee, Oklahoma, RO has failed to conduct a diligent search. Requests for the appellant's records were apparently made to the Federal Archives and Records Center, Laguna Niguel, California, and the Federal Records Center, Fort Worth, Texas; however, the RO failed to provide the record centers with the proper information to locate the appellant's records. Rather than completing the search ordered by the Court, the RO accepted a waiver of further searching signed by the appellant and returned the case to the Board for readjudication. The Board stated, incorrectly, that all relevant evidence had been obtained.

■ Neither the appellant nor VA has the authority to modify an order of this Court without leave of the Court. *See Harris v. Brown*, 7 Vet.App. 547 (1995). In addition, the waiver executed by the appellant is not valid, as he is legally incompetent and has been deemed incompetent for VA purposes. Both parties agree that the appellant's claim must be remanded for compliance with the Court's January 31, 1992, order and fulfillment of the Secretary's duty to assist. *See* 38 U.S.C. § 5107(a). Evidence in the record indicates that the appellant's VA inpatient hospitalization records from 1968 to 1973 relating to treatment in California and Oklahoma may exist, and the Secretary is directed to search for these records.

## C. Board of Psychiatrists

■ At oral argument, the Secretary's representatives proposed, upon remand, to refer this matter to a board of psychiatrists for reconciliation of the conflicting professional opinions concerning the nature and onset of the appellant's putative mental disorder. A board of psychiatrists is warranted under the circumstances.

## III.

■ The appellant has also challenged the validity of 38 C.F.R. § 3.303(c) (1994). It is the duty of this Court to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary." 38 U.S.C. § 7261(a)(1); *see e.g., Davenport v. Brown*, 7 Vet.App. 476 (1995); *Tallman v. Brown*, 7 Vet.App. 453 (1995); *Gardner v. Derwinski*, 1 Vet.App. 584 (1991). Although the matter must be remanded as set forth above, the Court will review the validity of 38 C.F.R. § 3.303(c), as it was determinative to the outcome of the Board decision on appeal and may again prove determinative during readjudication. *See Allen v. Brown*, 7 Vet. App. 439 (1995).

■ The Secretary of Veterans Affairs has authority under 38 U.S.C. § 501(a) to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws." Determining whether 38 C.F.R. § 3.303(c) violates the Secretary's statutory authority requires examining the language of the statute and the interpretation adopted by the Secretary. *See Gardner*, 1 Vet.App. at 586–87. In analyzing a statute, we look at the overall structure of the statute and the specific language at issue. *Tallman*, 7 Vet.App. at 460. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *see Davenport, supra*. When Congress creates room for agency interpretation or ex-

pressly delegates policy making authority to the Secretary, the scope of judicial review is limited. *Pauley v. BethEnergy Mines,* 501 U.S. 680, 696, 111 S.Ct. 2524, 2533–34, 115 L.Ed.2d 604 (1991). The Court will sustain a regulation that is consistent with the language of the statute and is a plausible or reasonable interpretation of the law. *Chevron, supra* at 843–44, 104 S.Ct. at 2781–83; *Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 1767–68, 114 L.Ed.2d 233 (1991). Substantial deference is given to the statutory interpretation of the agency authorized to administer the statute. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782–83; *Rust,* 500 U.S. at 184, 111 S.Ct. at 1767–68; *see Tallman,* 7 Vet.App. at 463–465.

■ The appellant contends that 38 C.F.R. § 3.303(c) is invalid because it contradicts the plain and unambiguous language enacted by Congress in 38 U.S.C. § 1111, which states,

> *For the purposes of section 1110* of this title, every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that *the injury or disease* existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C. § 1111 (emphasis added). Section 1110 of title 38 which is referred to in section 1111 sets forth the basic entitlement to disability compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty...." Under section 1111, unless a defect, infirmity, or disorder is duly noted during the induction physical examination, a presumption arises that the veteran was sound when he entered the service until the presumption has been rebutted by clear and unmistakable evidence. 38 U.S.C. § 1111; *Doran v. Brown,* 6 Vet.App. 283, 286 (1994); *Bagby v. Derwinski,* 1 Vet.App. 225, 227 (1991). If the presumption of soundness is properly rebutted, the veteran is not entitled to service-connected disability

benefits unless he can show his condition was aggravated by military service. *Green v. Derwinski,* 1 Vet.App. 320, 322–23 (1991); *Hunt v. Derwinski,* 1 Vet.App. 292 (1991).

The challenged regulation sets forth conditions, such as refractive eye disorders and personality disorders, the very nature of which connotes that the condition preexisted service. The relevant portion of 38 C.F.R. § 3.303(c) states,

> There are medical principles so universally recognized as to constitute fact (clear and unmistakable proof) and when in accordance with these principles existence of a disability prior to service is established, no additional or confirmatory evidence is necessary.... In the field of mental disorders, personality disorders which are characterized by developmental defects or pathological trends in the personality structure manifested by a lifelong pattern of actions or behavior, chronic psychoneurosis of long duration or other psychiatric symptomatology shown to have existed prior to service with the same manifestations during service, which were the basis of the service diagnosis, will be accepted as showing preservice origin.... [P]ersonality disorders and mental deficiency as such are not disease or injuries within the meaning of applicable legislation.

38 C.F.R. § 3.303(c). The appellant contends section 3.303(c) contradicts the plain language of 38 U.S.C. § 1111 that "every veteran shall be taken to have been in sound condition ... except as to defects, infirmities, or disorders noted at the time of the examination." Since *no defect* (personality disorder) was noted during the appellant's entry examination, the appellant argues he is entitled to the statutory presumption of sound condition. Therefore, the Secretary would need to produce clear and unmistakable evidence that the appellant's personality disorder preexisted service and was not aggravated by service. Implicit in this argument is that a congenital defect is a ratable disability since it would make no sense to invoke the presumption unless the condition involved would be a ratable disability.

■ The language of 38 U.S.C. § 1111 must be read in connection with 38 U.S.C.

§ 1110, on which 38 U.S.C. § 1111 is conditioned. When the two sections are read together, the term "defect" in section 1111 necessarily means a defect that amounts to or arises from disease or injury. Only service-connected "disability resulting from personal injury suffered or disease contracted" is entitled to compensation under 38 U.S.C. § 1110. It would be anomalous to broaden the express language of section 1110 by importing into it the virtually unlimited word "defect" from section 1111. A defect is "an imperfection that impairs worth or utility" or "a lack of something necessary for completeness, adequacy, or perfection." WEBSTER'S NEW WORLD DICTIONARY 333 (3rd ed.1988). If the Court accepted the appellant's argument, any defect (in the unlimited sense) not noted during an entry examination or proved preexisting by clear and unmistakable evidence would entitle a veteran to VA compensation. Personality defects, character defects, defects of mental sufficiency, and even moral defects are potentially included. By definition, any person who is not perfect, i.e., everyone, has a defect. We do not believe Congress had such an intention. In section 1111 itself, subsequent to the use of the word *defect* in the phrase "defects, infirmities, or disorders," the statutory language in the same sentence states in effect that there need be clear and unmistakable evidence of *disease or injury* where the "defect" was not noted upon enlistment. It would be anomalous in the extreme to expand "disabilities" to include non-disease or non-injury entities such as congenital defects, and then allow their existence to be rebutted only by evidence of disease or injury when a congenital defect is neither a disease nor an injury. Our interpretation of the term "defect" in section 1111 is internally consistent with section 1111 and consistent with the title 38 statutory scheme as a whole.

Congress did not define the generic words *disease* and *injury* as they appear in title 38 except to the extent of listing particular conditions which are to be considered "chronic diseases" in the definitions section. Included in that list of diseases is "psychosis." No other mental condition is so listed. *See* 38 U.S.C. § 1101(3). The Secretary was granted the authority to designate other non-listed conditions as chronic diseases if he so chooses. *Ibid.* The Secretary has not added personality disorder to the list of conditions deemed chronic diseases. In fact, rather than add personality disorder to the list of chronic diseases, the Secretary has seen fit to explicitly exclude congenital or developmental defects, such as personality disorder, as diseases, and hence any disability resulting therefrom cannot be service connected. *See* 38 C.F.R. §§ 4.9, 4.127 (1994). The Court has acceded to this exclusion in previous cases. *See e.g., Elkins v. Brown,* 8 Vet. App. 391 (1995); *Johnson v. Principi,* 3 Vet. App. 448 (1992); *Beno v. Principi,* 3 Vet. App. 439 (1992). The Court will give due deference to the Secretary's interpretation of disease and injury in relation to personality disorder because it is reasonable and plausible. *See Chevron, supra; Tallman, supra* at 464–65; *Brooks v. Brown,* 5 Vet.App. 484, 486–87 (1993). We find the Secretary acted within statutory authority in establishing by regulation that personality disorders are not a disease within the meaning of veterans' benefits law. A personality disorder, therefore, is not the type of disease- or injury-related defect to which the presumption of soundness can apply. We hold that 38 C.F.R. § 3.303(c), as it pertains to personality disorder, is a valid exercise of the authority granted to the Secretary of Veterans Affairs in 38 U.S.C. § 501.

**IV.**

Accordingly, upon consideration of the record, the briefs, and the arguments, the Court VACATES the August 1993 decision of the BVA and REMANDS the matter for readjudication consistent with this opinion.