BRYSON, Circuit Judge.
Sheri L. Clegg appeals from an order of the Court of Appeals for Veterans Claims affirming a decision by the Board of Veterans’ Appeals. The Board held that a July 16, 1979, regional office rating decision, which denied service connection for a mental condition, did not contain clear and unmistakable error. We affirm.
I
Ms. Clegg served on active duty in the United States Army from November 1973 to March 1977. During a May 1974 medical examination, Ms. Clegg reported that she had nervous trouble, depression or excessive worry, and frequent trouble sleeping, but the report of that examination stated that she had no significant mental illness. Other service records showed a history of alcohol abuse, but did not note any mental illness. Her discharge records also did not indicate any significant mental illness.
After her discharge, Ms. Clegg received medical attention at several different institutions and received varying diagnoses. In November 1977, she was examined at the Colorado State Hospital in Pueblo, Colorado, where she was diagnosed with “borderline personality organization.” In May and June 1978, she was hospitalized at the Life Care Center in Colorado Springs, Colorado, and diagnosed with “depressive neurosis.” In December 1978, she was again hospitalized and diagnosed with a “borderline personality disorder” and habitual alcohol abuse. Reports from the Topeka, Kansas, Veterans Administration Medical Center in January 1979 and June 1979 indicate a diagnosis of “severe borderline personality organization.” Finally, during a period of hospitalization at the Denver Veterans Administration Medical Center between January and June 1981, Ms. Clegg was diagnosed with schizophrenia. Later reports in 1982, 1986, and 1987 from the Denver Medical Center also contained diagnoses of schizophrenia.
On July 7, 1978, Ms. Clegg filed a claim for benefits based in part on her mental condition. In response, the Veterans Administration regional office denied service connection for a mental condition in a July 16, 1979, rating decision. The rating decision stated that Ms. Clegg was found to be suffering from severe borderline personality organization, but it denied service connection on the ground that there was no evidence of in-service treatment or diagnosis of a qualifying mental condition. Ms. Clegg filed a Notice of Disagreement, but did not appeal the matter further.
In September 1988, Ms. Clegg requested that her claim be reopened in light of her presentation of new and material evidence. In 1992 the Board granted her request, reopened her claim, and granted service connection for a psychiatric disorder, with an effective date of September 1988.
Three years later, in March 1995, Ms. Clegg filed a claim alleging that the July 16, 1979, rating decision contained clear and unmistakable error, and that the effective date for her disability benefits should therefore be July 1978. The regional office denied the claim, and the Board of Veterans’ Appeals affirmed. The Board noted that Veterans Administration regulations explicitly excluded personality disorders from the class of mental conditions for which service connection could be granted. Examining the medical records, *938 the Board concluded that at the time of the July 1979 decision, the regional office had been presented only with evidence of a personality disorder, and that no confirmed diagnosis of schizophrenia (a condition for which service connection could be granted) was made until 1981.
Ms. Clegg appealed the Board’s decision to the Court of Appeals for Veterans Claims. The court upheld the Board’s decision, finding that the record contained evidence of alcoholism and a personality disorder at the time of the July 16, 1979, rating decision, but that it was “negative for a diagnosis of a psychiatric disability for which service connection could be granted” at the time of that decision. Addressing Ms. Clegg’s argument that the regional office had failed to apply 38 C.F.R. § 3.303(b), the court held that section 3.303(b) was inapplicable because there was no competent diagnosis of a psychiatric disability before the regional office in July 1979.
In her brief to the Court of Appeals for Veterans Claims, Ms. Clegg also argued that the 1979 rating decision was contrary to another subsection of the same regulation, 38 C.F.R. § 3.303(d). The court, however, declined to address the merits of that issue. Instead, it held that it did not have jurisdiction to decide that issue because Ms. Clegg had not raised subsection 3.303(d) in the proceedings before the Board. This appeal followed.
II
Ms. Clegg first argues that the regional office misinterpreted section 3.303(b) because that regulation does not require the regional office to be presented with a diagnosis of a psychiatric disability in order to find service connection. We disagree.
Under the federal veterans’ benefits system, the government pays compensation for disability resulting from an injury suffered or disease contracted, or for aggravation of a preexisting injury or disease, in the line of duty. See 38 U.S.C. § 1110. The compensation inquiry has two parts — whether the veteran has a disability relating to an injury or disease, and whether the injury or disease was incurred or aggravated in the line of duty. A disability is “service-connected” if it was incurred or aggravated in the line of duty. See 38 U.S.C. § 101(16).
The Department of Veterans Affairs regulation setting forth “principles relating to service connection” is found at 38 C.F.R. § 3.303. That regulation has been in effect since 1961. Subsection (a) of section 3.303 sets forth the general rule for service connection, closely tracking the pertinent provisions of the governing statute, 38 U.S.C. § 1110. In particular, subsection (a) provides that service connection “may be accomplished by affirmatively showing inception or aggravation during service or through the application of statutory presumptions,” such as the presumption of sound condition (38 U.S.C. § 1111) or the various presumptions relating to certain diseases that become manifest within particular periods after the veteran’s separation from service (38 U.S.C. § 1112). Subsection (a) further provides that each disabling condition for which the veteran seeks service connection must be considered on the basis of the circumstances of his service, the official history of each organization in which he served, his medical records, and all pertinent medical and lay evidence. Subsection (a) concludes: “Determinations as to service connection will be based on review of the entire evidence of record, with due consideration to the policy of the Department of Veterans Affairs to administer the law under a broad and liberal interpretation consistent with the facts in each individual case.
*939 Subsection (b) of section 3.303, which is entitled “Chronicity and continuity,” addresses the manner in which service connection can be established for diseases that are shown in service, or within the presumptive period after separation, to be chronic diseases. Subsection (b) provides:
With chronic diseases shown as such in service (or within the presumptive period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes.... For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “Chronic.” When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim.
By its terms, subsection (b) applies to diseases that are shown to be chronic during service or within the presumptive period. For such diseases, subsequent manifestations of the disease are considered service connected unless they are clearly the product of an intervening cause. If the fact of chronicity in service is not adequately shown and supported, the regulation provides that a showing of continuity of symptomatology after separation from the service is necessary to establish service connection.
Ms. Clegg argues that the last two sentences of subsection (b), which discuss the circumstances under which continuity of symptomatology must be shown, allow a finding of service connection even when no diagnosis of a disease has been made either in service or during the presumptive period. Under subsection (b), Ms. Clegg argues, service connection is shown if the evidence establishes that a particular condition was noted in service and symptoms of the same condition were noted continuously after discharge.
The portion of subsection (b) on which Ms. Clegg relies does not entitle her to relief. Subsection (b) deals with a narrow problem — -when continuity of symptoms must be shown in order to establish that later manifestations of a disease contracted in service give rise to a conclusion of service connection. It does not address the question whether the veteran contracted a disease during service. Although the regulation allows service connection to be established in some situations based on chronicity or continuity, the regulation does not negate the requirement that the veteran show that he or she contracted a compensable disease or injury in service.
As found by the Board of Veterans’ Appeals and the Court of Appeals for Veterans Claims, the record before the regional office in July 1979 did not contain evidence showing the existence of a mental disease or disability. The medical records showed a diagnosis of a personality disorder. Department regulations are clear, however, that “personality disorder and mental deficiency are not diseases or injuries in the meaning of applicable legislation for disability compensation purposes.” 38 C.F.R. § 4.9; see also 38 C.F.R. §§ 3.303(c), 4.127; Winn v. Brown, 8 Vet. *940 App. 510, 516 (1996), appeal dismissed, 110 F.3d 56 (Fed.Cir.1997). Accordingly, the regional office determined, as of 1979, that Ms. Clegg did not have a disease or injury within the meaning of the veterans’ benefit statutes. For that reason, the regional office had no need to reach the question whether Ms. Clegg’s purported disability was service-connected, much less the narrower question addressed by section 3.303(b) — whether subsequent recurrence of a disease contracted in service is sufficient to establish service connection. The regional office therefore did not commit clear and unmistakable error by failing to apply section 3.303(b) in its July 1979 decision.
Ill
Ms. Clegg also challenges the holding of the Court of Appeals for Veterans Claims that it did not have jurisdiction to address Ms. Clegg’s argument that the regional office committed clear and unmistakable error when it failed to apply 38 C.F.R. § 3.303(d) in its 1979 rating decision. The court held that it was without jurisdiction to decide that issue because Ms. Clegg had not raised the issue before the Board of Veterans’ Appeals.
Section 3.303(d) provides:
Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and Department of Veterans Affairs regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.
Ms. Clegg argues that the jurisdictional question is controlled by Maggitt v. West, 202 F.3d 1370 (Fed.Cir.2000). In Maggitt, which did not involve a claim of clear and unmistakable error, we held that the Court of Appeals for Veterans Claims “has jurisdiction to hear arguments presented to it in the first instance, provided it has jurisdiction over the veteran’s claim.” Id. at 1376. Ms. Clegg contends that the court has jurisdiction over the claim of clear and unmistakable error and that the misapplication of 3.303(d) is simply a new argument in support of a single claim.
The government responds that the jurisdictional issue is controlled by Ledford v. West, 136 F.3d 776, 779 (Fed.Cir.1998), which held that the Court of Appeals for Veterans Claims did not have jurisdiction to entertain a newly raised claim. The government’s position is that, in the context of an assertion of clear and unmistakable error by the regional office, the argument that the regional office misapplied section 3.303(b) and the argument that it misapplied section 3.303(d) are not two arguments in support of a single claim, but two separate and independent claims.
We conclude that it is unnecessary to decide whether Ms. Clegg’s section 3.303(d) argument constitutes a separate “claim” of clear and unmistakable error that is outside the jurisdiction of the Court of Appeals for Veterans Claims, or simply an additional argument in support of a single claim, and thus within the court’s jurisdiction under Maggitt. It is unnecessary to reach that jurisdictional question because it is clear on its face that section 3.303(d) has no possible application to this case and thus would not provide any conceivable ground for relief even if the Court of Appeals for Veterans Claims had jurisdiction to consider it.
*941 Section 3.303(d) applies to cases in which the regional office is considering a claim for compensation based on a disease that was diagnosed after the veteran was discharged from service. The regulation does not provide any additional ground for relief, but simply restates the statutory rule that service connection may be granted if the evidence establishes that the disease in question was incurred in service, and specifies that the presumptive periods of service connection set forth in statute and regulation “are not intended to limit service connection to diseases so diagnosed [after discharge] when the evidence warrants direct service connection.” Section 3.303(d) has no possible application to this case because there was no post-service diagnosis of schizophrenia at the time of the July 1979 rating decision, and because the rating decision was not based on any adverse use of the statutory or regulatory presumptive period of service connection.
Because it is clear on its face that section 3.303(d) is inapplicable to Ms. Clegg’s claim, the jurisdictional issue that Ms. Clegg presents cannot have any effect on the ultimate outcome of this case. Even if we were to reverse the jurisdictional ruling of the Court of Appeals for Veterans Claims, the outcome of the case on remand — rejection of the section 3.303(d) argument on the merits — would be preordained and would entail a pointless waste of judicial resources. Any decision by this court on the jurisdictional issue would therefore amount to an abstract ruling of law unconnected to the merits of Ms. Clegg’s underlying claim, a result that would be contrary to the dictate of our jurisdictional statute, which directs us to limit ourselves to interpreting constitutional and statutory provisions “to the extent presented and necessary to a decision.” 38 U.S.C. § 7292(c) (emphasis added). For that reason, we uphold the decision of the Court of Appeals for Veterans Claims without reaching the question whether, in the context of a claim of clear and unmistakable error, that court has jurisdiction to consider an argument made for the first time in that court.