Citation Nr: 1749208 
Decision Date: 10/27/17 Archive Date: 11/06/17

DOCKET NO. 17-10 317 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an initial compensable evaluation for hypertension.

2. Entitlement to service connection for chronic joint pain.

3. Entitlement to service connection for back pain.

4. Entitlement to service connection for right knee strain.

5. Entitlement to service connection for left knee strain.

6. Entitlement to service connection for myopia.

7. Entitlement to service connection for bilateral hearing loss.

8. Entitlement to service connection for sleep apnea.

9. Entitlement to service connection for respiratory problems, to include chronic cough and shortness of breath.

10. Entitlement to service connection for upper gastrointestinal bleeding and diarrhea.

11. Entitlement to service connection for an acquired psychiatric disorder, to include generalized anxiety disorder and posttraumatic stress disorder (PTSD). 

12. Entitlement to a total disability rating based on individual unemployability due to service-connected disability. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

E. F. Brandau, Associate Counsel


INTRODUCTION

The Veteran has active duty service in the United States Navy from March 1986 to June 1995. He has an additional period of service from June 1995 to December 1998. The Veteran was awarded a Kuwait Liberation Medal and has verified service in Southwest Asia.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a July 2013 rating decision by the Department of Veterans Affairs (VA) Regional Office. 

In Clemons v. Shinseki, 23 Vet. App. 1, 5-6 (2009) the Court held that in determining the scope of a claim the Board must consider the claimant's description of the claim, symptoms described, and the information submitted or developed in support of the claim. The Board notes that the Veteran has been diagnosed with an anxiety disorder and with PTSD. In light of the Court's decision in Clemons, the Board has recharacterized the issue on appeal as described above. 

In April 2017, the Veteran claimed that he was unemployed and had been for several years due to his disabilities, to include hypertension A TDIU claim is part of an increased rating claim and is properly before the Board when such claim is raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). Accordingly, a Rice TDIU claim has been raised by the record in this case during the pendency of the Veteran's claim and the Board has characterized the issues on appeal to include entitlement to a TDIU. Rice, 22 Vet. App. at 453-54

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of an initial compensable evaluation for hypertension; service connection for chronic joint pain, back pain, sleep apnea, respiratory problems, and upper gastrointestinal bleeding; and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The probative, competent evidence is against a finding that the Veteran's right knee strain is related to active duty service.

2. The probative, competent evidence is against a finding that the Veteran's left knee strain is related to active duty service.

3. Myopia is a congenital defect.

4. The probative, competent evidence is against a finding that the Veteran's bilateral hearing loss is related to active duty service.

5. The probative, competent evidence is against a finding that the Veteran's acquired psychiatric disorder is related to active duty service. 


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a right knee strain have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2016).

2. The criteria for entitlement to service connection for a left knee strain have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.

3. The criteria for entitlement to service connection for myopia have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 4.9 (2016).

4. The criteria for entitlement to service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.

5. The criteria for entitlement to service connection for an acquired psychiatric disorder, to include anxiety disorder and PTSD, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Assist

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Service Connection

Generally, to establish service connection, a claimant must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). A disability that is proximately due to, the result of, or permanently aggravated by a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310 (2016).

As it pertains to a current disability, the Veteran has been diagnosed with a bilateral knee strain, myopia, bilateral hearing loss, and a generalized anxiety disorder. The Veteran has sought treatment for these disabilities at various times throughout the duration of the appeal. Therefore, the Board finds that there is a current disability for service-connection purposes. The remaining elements of entitlement to service connection will be discussed separately.

Right and left knee strain

The Veteran's service treatment notes are silent for any symptoms or diagnoses of a knee disability. 

The Veteran signed a written statement from March 1998 (during his second period of service in which he was discharged under other than honorable conditions) indicating that he had not missed any duty time for more than three days, and that he had not suffered from an injury or illness while on active duty for which he did not seek medical care. He had a periodic examination in March 1996 (nine months after separation from his first period of service) that showed normal lower extremities. His Report of Medical History at the time specifically denied any knee problems. Therefore, the Board does not find an in-service event or injury for service-connection purposes.

The Veteran underwent VA examination in connection with his claim in May 2013. At the time the Veteran reported that he had a knee arthroscopy in 1996 and that he has constantly painful knees. He was diagnosed with a bilateral knee strain. During his range of motion testing the Veteran had normal extension at zero degrees bilaterally and a slightly reduced flexion at 110 degrees bilaterally. The Veteran had normal strength and reflexes and his stability testing was normal. The VA examiner opined that the Veteran's current bilateral knee strain was not caused by any diagnosed service condition or undiagnosed condition due to Gulf War syndrome complex. In making this determination the VA examiner noted that the record was silent for knee issues during his active duty or post-active duty period. 

In August 2017 a VA examiner reviewed the Veteran's file and found that his osteoarthritis of the bilateral knees was less likely as not caused by or a result of, or aggravated beyond the natural progression by his active duty service or a specific exposure event experienced by the Veteran during service in Southwest Asia. In making this determination the VA examiner reviewed medical literature as well as the claims file, and noted that the medical literature did not support a cause and effect relationship between osteoarthritis in the bilateral knees and environmental exposures in Southwest Asia. 

The Board affords great weight to the VA opinions because one is based on a physical examination of the Veteran and both are based on a review of his claims file. The Veteran's service treatment records do not show any knee symptoms (in fact, the Veteran specifically denied having knee problems in 1996), and there is nothing to suggest that his knee pain manifested within the presumptive period following separation from service. Although the Veteran reported having a knee arthroscopy in 1996, this was not documented in the record. Regardless, there is no evidence to suggest a nexus between his current bilateral knee disability and active duty service. The Veteran had submitted no evidence to the contrary. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, because the preponderance of the evidence is against the claim, that doctrine is not for application. See 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet App. 49 (1990); 38 C.F.R. § 3.102.

Myopia

The evidence of record indicates that the Veteran has a present diagnosis of myopia for which he seeks service connection.

Refractive errors, include astigmatism, myopia, hyperopia, and presbyopia, are considered congenital defects. See M21-1 Part III, Subpart iv, 4.B.1.d. (accessed July 24, 2017). Generally, congenital defects are not diseases for VA compensation purposes. 38 C.F.R. § 3.303 (c) (2016); see also 38 C.F.R. § 4.9; see also Winn v. Brown, 8 Vet. App. 510, 516 (1996). In the absence of a superimposed disease or injury, service connection may not be allowed for congenital defects or refractive errors of the eyes, even if visual acuity decreased in service, as these are not diseases or injuries within the meaning of applicable legislation relating to service connection. Id. Thus, VA regulations specifically prohibit service connection for either a congenital defect or a refractive error of the eye unless such a defect was subjected to a superimposed disease or injury that created additional disability. See VAOPGCPREC 82-90, 55 Fed. Reg. 45711 (July 18, 1990) (service connection may not be granted for defects of congenital, developmental or familial origin, unless the defect was subject to a superimposed disease or injury). 

Accordingly, the Board must deny the claim as the Veteran does not meet the criteria for service connection, namely, a presently diagnosed disability within the meaning of the term "disability" for VA compensation purposes. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, because the preponderance of the evidence is against the claim, that doctrine does not apply. See 38 U.S.C.A. § 5107 (West 2014); Gilbert, 1 Vet App. 49; 38 C.F.R. § 3.102.

Bilateral hearing loss

The Veteran's service treatment notes likewise do not show any hearing loss during service. In March 1996, six months after his first period of service, the Veteran specifically denied having hearing loss difficulties. His hearing testing was normal and showed no deficits at that time. In May 2013 a VA audiologist reviewed the Veteran's file and opined that the Veteran's hearing loss disability was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. 

In making this determination, the VA examiner noted that the Veteran's hearing was within normal limits bilaterally on all military audiograms from February 1986 to October 1998, and there was no evidence of hearing loss during the honorable duty period or during the first audiogram afterwards in March 1996. The VA examiner also cited the Institute of Medicine Report on noise exposure in the military that found that there was no scientific support for delayed onset hearing loss. 

The Board affords this opinion great weight because it is based on a review of the Veteran's treatment record to include all of his audiograms during service. The Board notes that these audiograms during service were normal, and also that there is no evidence of hearing loss after separation from service. The Veteran has not submitted evidence suggesting a nexus between a hearing loss disability and active duty service. 

Given the lack of nexus between a present disability and active duty service, the Board must deny this claim. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, because the preponderance of the evidence is against the claim, that doctrine does not apply. See 38 U.S.C.A. § 5107 (West 2014); Gilbert, 1 Vet App. 49; 38 C.F.R. § 3.102.
Acquired psychiatric disorder

As it pertains to an in-service event or injury, there is no evidence of any mental health symptoms during active duty service. The Veteran denied having any depression, excessive worry, loss of memory, or nervous trouble in March 1996. Moreover, there is no evidence of any mental health deficit during his periodic examination in March 1996 or at any other time during either period of service. 

When the Veteran underwent VA examination in connection with his claim in May 2013, the VA examiner noted that the Veteran's symptoms did not meet the diagnostic criteria for PTSD, but that he did have a diagnosis of generalized anxiety disorder. At the time he was assigned a global assessment of functioning score of 65. The Veteran was noted to have occupational and social impairment due to mild or transient symptoms which decreased work efficiency and the ability to perform occupational tasks only during periods of significant stress; or symptoms controlled by medication. The Veteran reported an incident where he ran from the police, jumped into the river, and sustained a head laceration and back injury; he asserted this was a case of mistaken identity but that it resulted in prolonged medical attention and distress. He reported having symptoms of frequent worry, restlessness, sleep impairment, and compulsive behaviors. The Veteran also described being involved in a truck explosion and people being killed. 

The VA examiner opined that the Veteran did not have a current diagnosis of PTSD that was related to his combat experience, and that his generalized anxiety disorder was not caused by or a result of his military combat experience. The VA examiner noted that there was no objective evidence found to support this relationship. This opinion is given great weight because it is based on a mental status examination of the Veteran as well as a review of his claims file. As noted, there is no evidence of an in-service event or injury for a mental health disability, and there is no ongoing mental health treatment or complaints of mental health symptoms. In sum, the medical evidence does not suggest a nexus between the current mental health disability and active duty service. 

As it pertains generally to the Veteran's knee pain, myopia, bilateral hearing loss, and mental health disability, the Board has considered the Veteran's lay statements describing his symptoms. While the Veteran is competent to offer statements about things he observed through his senses, such as pain, as a layperson he is not competent to diagnose a disability or to offer an opinion about the etiology of such a disability, to include whether the pain he experienced during service is related to his current disability. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Although the Veteran was a medic in service and has medical knowledge, there is nothing to suggest that he has the particularized training to diagnose or provide etiologies for these disabilities. As such, the VA examiner's medical opinions are more probative than any lay statement by the Veteran. 


ORDER

Entitlement to service connection for right knee strain is denied.

Entitlement to service connection for left knee strain is denied.

Entitlement to service connection for myopia is denied.

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to service connection for an acquired psychiatric disorder, to include generalized anxiety disorder and PTSD is denied.


REMAND

Hypertension

As to the issue of entitlement to an increased rating for service-connected hypertension, in September 29, 2017 the Veteran underwent VA examination in connection with his claim for hypertension, and several blood pressure readings were taken. While a rating decision was issued in October 2017, this issue was not addressed therein and a Supplemental Statement of the Case was not issued after this VA examination. 

Veterans are entitled to a review of claims denied by VA. 38 U.S.C.A. § 7104(a) (West 2014). This review is performed by the Board and must be based on the entire record and upon consideration of all evidence and material of record. Id. Simply put, veterans are entitled to a second look at all evidence and decisions made by VA. There are limited exceptions to this general principle. For example, veterans can waive review of evidence by the AOJ and allow the Board to issue a decision based in part on evidence that has not been reviewed by the AOJ. See 38 C.F.R. § 20.1304 (2016). This provision, however, applies only to evidence that has been submitted by the veteran or his or her representative. It does not apply to evidence added to the file by VA. In this case, the additional VA examination was added to the file by VA. Although the Veteran's representative submitted a statement waiving AOJ review, this was for all documents in the record as of August 31, 2017. Moreover, this evidence was submitted by VA, not the Veteran or his representative. Thus, remand is required so that this new evidence can be reviewed in the first instance by the AOJ. 

Joint pain, back pain, sleep apnea, respiratory problems, gastrointestinal bleeding, and TDIU

As noted, the Veteran served in Southwest Asia and is in receipt of a Kuwait Liberation Medal. Service connection may be granted on a presumptive basis for a Persian Gulf veteran who exhibits objective indications of qualifying chronic disability, including resulting from undiagnosed illness, that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 21, 2016, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C.A. § 1117; 38 C.F.R. 
§ 3.317(a)(1). In claims based on qualifying chronic disability, unlike those for direct service connection, there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Laypersons are competent to report objective signs of illness.

A "qualifying chronic disability" for VA purposes is a chronic disability resulting from (A) an undiagnosed illness, (B) a medically unexplained chronic multisymptom illness (such as chronic fatigue syndrome (CFS), fibromyalgia, or IBS) that is defined by a cluster of signs or symptoms, or (C) any diagnosed illness that the Secretary determines in regulation prescribed under 38 U.S.C.A. § 1117(d) warrants a presumption of service connection. 38 U.S.C.A. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(i)(B).

"Objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to a physician, and other, non-medical indicators that are capable of independent verification. To fulfill the requirement of chronicity, the illness must have persisted for a period of six months. 38 C.F.R. § 3.317(a)(2), (3). Signs or symptoms that may be manifestations of undiagnosed illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; and (12) abnormal weight loss. 38 C.F.R. § 3.317(b).

In May 2013 the Veteran underwent VA examination in connection with his claims for joint pain, sleep apnea, respiratory problems, and gastrointestinal bleeding. In all of the VA examinations, the VA examiner noted that the Veteran served in Southwest Asia and that he may have been exposed to environmental hazards. The VA examiner acknowledged the possibility of an "undiagnosed illness" but merely indicated that the condition onset was after service, and was not due to service. This opinion is insufficient because it lacks rationale explaining why these disabilities would not have developed as a result of exposure to environmental hazards during the Persian Gulf War, or why these disabilities would not be considered "undiagnosed illnesses." 

In August 2017 the Veteran's file was reviewed by a VA nurse practitioner who opined that there were no undiagnosed or diagnosable but medically unexplained/partially explained chronic multisymptom illnesses of unknown etiology attributable to environmental exposures during deployment in Southwest Asia. The VA examiner also stated there was no objective evidence on history or physical examination of chronic fatigue syndrome, fibromyalgia, or irritable bowel syndrome. She concluded that there were no conditions presumptive of Gulf War environmental hazards. However, once again no rationale was provided as to why these disabilities were not undiagnosed illnesses or how she came to these conclusions. This is particularly important because the Veteran may be entitled to presumptive service connection due to many of these symptoms, to include fatigue, muscle and joint pain, respiratory problems, sleep disturbances, and gastrointestinal symptoms. 

Therefore, on remand the VA examiner should provide a full rationale with references to treatment history explaining whether these disabilities would be a qualifying chronic disability for VA purposes, given the Veteran's service during the Gulf War. Once VA provides an examination, it must be adequate or VA must notify the Veteran why one will not or cannot be provided. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). An examination is adequate if it "takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." Barr, 21 Vet. App. at 311.

Additionally, the Board notes that the VA examiner did not diagnose the Veteran with a sleep apnea disability, a respiratory disability, or a gastrointestinal disability and found there was no evidence to support these diagnoses. However, the Board notes that the Veteran has a sleep study from August 2014 diagnosing the Veteran with very severe non-positional obstructive sleep apnea. Moreover, the Veteran has had past treatment for chronic cough and blood in stool, which was not discussed by the VA examiner in determining whether the Veteran had a current disability. On remand the VA examiner should consider the Veteran's treatment history for these disabilities in determining whether there is a current diagnosis and a nexus between the Veteran's current disabilities and active duty service.

The Board notes that the Veteran has complained of a back pain disability. At present, there has been no VA examination in connection with this claim. There is a possibility that the Veteran's back pain is related to his joint pain disability, therefore on remand the VA examiner should determine whether the Veteran's back pain is causally linked to his joint disability. 

Given that the Veteran has claimed he is unable to work due a combination of these disabilities and that there is the possibility of presumptive service connection, the Board finds that the claim for a TDIU is inextricably intertwined with these claims and must also be remanded. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (the prohibition against the adjudication of claims that are inextricably intertwined is based upon the recognition that claims related to each other should not be subject to piecemeal decision-making or appellate litigation). 

The Veteran receives continuous treatment through VA, and the Board finds that the AOJ should obtain and associate with the file VA treatment records dated from September 2017 to present. See Bell v. Derwinski, 2 Vet. App. 611 (1992).

Accordingly, the case is REMANDED for the following actions:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain and associate with the record VA treatment records for the Veteran dated from September 2017 to present. All actions to obtain the requested records should be fully documented in the claims file. If they cannot be located or no such records exist, the Veteran and his representative should be so notified in writing. 

2. Schedule a VA compensation examination to address the Veteran's allegation of undiagnosed illness stemming from his service during the Persian Gulf War. The claims file, including a complete copy of this decision and remand, must be made available to and reviewed by the examiner for the pertinent medical and other history, and the examination report should note that review. All necessary testing and evaluation should be performed.

In particular, the examiner must specify whether the Veteran's complaints of fatigue, gastrointestinal complaints, respiratory problems, and joint and back pain are indicative of undiagnosed illness or chronic multi-symptom illness of the type contemplated by 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317. Alternatively, s/he should specifically indicate whether these symptoms, instead, are attributable to known clinical diagnoses. The VA examiner should take into account that the Veteran has been diagnosed with severe obstructive sleep apnea, and has had treatment for a chronic cough and for blood in the stool.

If diagnoses are made, the examiner should determine whether any of the disabilities were incurred in or aggravated by service. 

If no diagnosis is made accounting for these symptoms, the examiner therefore must reconcile such conclusion with the evidence of record detailing the Veteran's complaints. Therefore, the examiner should indicate whether the Veteran meets the criteria for a sleep disorder, fibromyalgia or a functional gastrointestinal disorder diagnosis owing to his Persian Gulf War service.

If the Veteran's sleep apnea, respiratory difficulties, gastrointestinal issues, and back and joint pain cannot be ascribed to any known clinical diagnosis, specify whether he has objective indications of a chronic disability resulting from an undiagnosed illness, as established by history, physical examination, and laboratory tests, that has either (1) existed for 6 months or more, or (2) exhibited intermittent episodes of improvement and worsening over a 6-month period.

Any and all opinions must be accompanied by a complete rationale. If the examiner is unable to reach an opinion without resort to speculation, he or she should explain the reasons for this inability and comment on whether any further tests, evidence or information would be useful in rendering an opinion.

3. Thereafter, readjudicate the issues on appeal. If any of the benefits sought remain denied, furnish the Veteran and his representative a Supplemental Statement of the Case and allow an appropriate period of time for response before returning the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
LANA K. JENG
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs