﻿Citation Nr: AXXXXXXXX
Decision Date: 02/27/20 Archive Date: 02/27/20

DOCKET NO. 190122-1877
DATE: February 27, 2020

ORDER

Readjudication of the claim for entitlement to service connection for a right knee disability is warranted. 

Readjudication of the claim for entitlement to service connection for a left knee disability is warranted. 

REMANDED

Entitlement to service connection for a right knee disability is remanded. 

Entitlement to service connection for a left knee disability is remanded.

FINDINGS OF FACT

1. The Veteran’s claims for entitlement to service connection for right and left knee disabilities were most recently denied by a May 1999 rating decision; the Veteran did not appeal the decision and documentation constituting new and material evidence was not actually or constructively received within the one-year appeal period. 

2. Additional evidence received since the May 1999 rating decision is new and tends to prove or disprove a matter in issue with regards to the claims for entitlement to service connection for right and left knee disabilities. 

CONCLUSIONS OF LAW

1. The May 1999 rating decision denying service connection for right and left knee disabilities is final. 38 U.S.C. § 7105; 38 C.F.R. §§ 19.20, 19.52, 20.200, 20.201, 20.203, 20.1103. 

2. The criteria for readjudicating the claims of entitlement to service connection for right and left knee disabilities have been met. 38 U.S.C. § 5108; 38 C.F.R. §§ 3.156, 3.2501. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from June 1973 to June 1977 and from February 1982 to February 1998. 

A January 2015 decision issued by a Department of Veterans Affairs (VA) Regional Office (RO) declined to reopen claims of service connection for right and left knee disabilities. 

On August 23, 2017, the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified across 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA), was signed into law. 

On June 18, 2018, VA received the Veteran’s request to opt into RAMP, the Rapid Appeals Modernization Program, in which he requested a higher-level review decision. The RO issued its higher-level review decision in October 2018, which considered the evidence of record as of the date VA received the RAMP election form. The October 2018 decision granted service connection for sleep apnea and denied service connection for a right and left knee disability and a bilateral hearing loss disability. In January 2019, the Veteran appealed the RAMP decision to the Board only to the extent that it denied service connection for a right and left knee disability. The Veteran did not appeal the denial of a bilateral hearing loss disability or the rating or effective date assigned with the award of sleep apnea. Thus, these issues are not before the Board. The Veteran selected direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

New and Relevant Evidence 

A claim for service connection for a right knee disability was originally denied by an October 1978 rating decision on the basis that the Veteran did not have a right knee disability. A later May 1999 rating decision denied the claims of entitlement to service connection for right and left knee disabilities on the basis that the Veteran did not have a right knee disability and the Veteran’s left knee bipartite patella was a congenital abnormality that was not caused or aggravated by active duty service. The Veteran did not appeal the decisions, nor was any new and material evidence actually or constructively received within a year following notification of the decisions; therefore, the decisions became final.

The Board notes that the new and material evidence issues regarding the claims for entitlement to service connection for a right and left knee disability have been recharacterized to reflect the applicable evidentiary standard of new and relevant evidence under the AMA. 38 U.S.C. § 5108; 38 C.F.R. §§ 3.2501(a)(1), 19.2. Specifically, VA will readjudicate a claim if new and relevant evidence is presented or secured. 38 C.F.R. § 3.156(d). “Relevant evidence is information that tends to prove or disprove a matter at issue.” 38 C.F.R. § 3.2501. Relevant evidence includes evidence that raises a theory of entitlement that was not previously addressed. Id.

Here, the evidence received since the May 1999 rating decision includes a January 2015 VA examination. The examiner opined that the Veteran’s right and left knee disabilities were not related to his service. This evidence is new because it was not before adjudicators when the Veteran’s claims were last denied in May 1999. This evidence is relevant because it may prove or disprove the current disability and nexus elements of the claims of entitlement to service connection for right and left knee disabilities. Thus, readjudication of the claims is warranted and to this extent only the appeals are granted. 

REASONS FOR REMAND

Service connection for right and left knee disabilities is remanded. 

The issue of entitlement to service connection for right and left knee disabilities are remanded to correct a duty to assist error that occurred prior to the October 2018 rating decision on appeal. In short, the Agency of Original Jurisdiction (AOJ) obtained a January 2015 medical opinion that is inadequate for rating purposes.

The Veteran’s January 1973 enlistment examination documents that his knees were normal. Following the completion of the Veteran’s first period of active duty service, an August 1978 medical note indicated that x-rays showed a left knee bipartite patella, which was described as a “developmental variation.” A December 1997 service treatment record (STR), during the Veteran’s second period of active duty service, notes that there was evidence of a left knee bipartite patella. The claims file does not contain an enlistment examination for the Veteran’s second period of active duty service. 

The Veteran was afforded a VA examination in January 2015. The examiner diagnosed degenerative arthritis in both knees. X-ray evidence showed a left knee bipartite patella, but the examiner did not diagnose this condition. The Veteran stated that his right and left knee issues were the result of kneeling, climbing, and performing concrete work during service. The examiner noted that after the Veteran’s separation from active duty service, the Veteran continued to work as a heavy equipment operator, in pavement maintenance, and as a concrete finisher for 14 years. The examiner opined that the Veteran’s right and left knee degenerative joint disease were not caused by, related to, a result of, or aggravated by service. The examiner’s rationale was that there was no new evidence relative to the active duty STRs since the May 1999 rating decision. 

Once VA has provided a VA examination, it is required to provide an adequate one, regardless of whether it was legally obligated to provide an examination in the first place. Barr v. Nicholson, 21 Vet. App. 303 (2007). A medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

The Board finds the January 2015 VA examination report to be inadequate. First, the examiner’s rationale is based on an absence of medical records. Namely, the examiner noted that no new STRs were added to the claims file since the May 1999 rating decision. In so doing, the examiner failed to account for other favorable medical evidence that was added to the claims file since the May 1999 rating decision. For example, a February 2014 Southern Orthopedic Specialists note documents that the Veteran experienced knee pain in an intermittent pattern for the past 30 years, which would include the time the Veteran served on active duty. Second, the examiner’s rationale is conclusory and lacks a reasoned medical explanation. The Veteran’s STRs document that the Veteran hyperextended his left knee, sustained second degree burns to his knees, and may have had degenerative changes to his left knee. The examiner did not offer any explanation on a relationship between these occurrences and the Veteran’s current right and left knee disabilities. For these reasons, the Board finds the January 2015 VA examination to be inadequate and concludes that a new VA examination is needed in order to fairly adjudicate this case.

Additionally, based on the August 1978 medical note that described the Veteran’s left knee bipartite patella to be a developmental variation, the Board seeks to ensure that it has a complete picture of the Veteran’s claimed left knee disability, including whether it is a congenital defect. This is especially important because during the January 2015 VA examination there was x-ray evidence of a left knee bipartite patella, but the examiner did not diagnose this condition. In the absence of a superimposed disease or injury, service connection may not be allowed for congenital defects as these are not diseases or injuries within the meaning of applicable legislation relating to service connection. 38 C.F.R. § 3.303(c); see also 38 C.F.R. § 4.9; Winn v. Brown, 8 Vet. App. 510, 516 (1996). Thus, VA regulations specifically prohibit service connection for a congenital defect unless such a defect was subjected to a superimposed disease or injury that created additional disability. See VAOPGCPREC 82-90, 55 Fed. Reg. 45,711 (July 18, 1990) (service connection may not be granted for defects of congenital, developmental or familial origin, unless the defect was subject to a superimposed disease or injury). 

Lastly, in December 2017 a private physician, Dr. W.H., completed nexus statements regarding each of the Veteran’s knees. Dr. W.H. indicated that he reviewed the Veteran’s medical records since separation from service, but did not review his STRs. Dr. W.H. diagnosed the Veteran with degenerative arthritis in both knees and opined that it was most likely caused by or a result of repeated injuries to the Veteran’s knees. Dr. W.H.’s rationales were limited to reciting that the Veteran repeatedly climbed and jumped from heavy equipment, engaged in prolonged kneeling while doing concrete work, and maneuvered an awkward position when he got into equipment. It is unclear if Dr. W.H.’s opinions connect the Veteran’s knee disabilities to his service. As the January 2015 VA examiner noted, the Veteran worked as a heavy equipment operator, in pavement maintenance and as a concrete finisher for 14 years following separation from active duty service. Thus, it is not clear if the repeated knee injuries mentioned by Dr. W.H. are in reference to the Veteran’s active duty service or his employment after service. Additionally, Dr. W.H.’s opinions are conclusory and lack a clear rationale as they are limited to reciting activities that led to the Veteran’s knee disabilities, without an explanation of how those activities resulted in the Veteran’s degenerative arthritis. As such, the Board finds that Dr. W.H.’s opinions are inadequate for evaluation purposes. 

The matters are REMANDED for the following action:

Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of the Veteran’s right and left knee disabilities. The examiner is asked to answer the following questions: 

(a.) Is it at least likely as not (a 50 percent or greater probability) that any left knee disability, to include bipartite patella, represents a congenital defect (i.e., a structural or inherent abnormality which is more or less static in nature) or a congenital disease (i.e., a condition capable of improving or deteriorating)?

(b.) If any left knee disability, to include bipartite patella, is a congenital defect, is it at least as likely as not (a 50 percent or greater probability) that the defect was subject to superimposed disease or injury during service resulting in a current disability?

(c.) If any left knee disability, to include bipartite patella, is a congenital disease, did the condition clearly and unmistakably (undebatable) exist prior to entry into the Veteran’s periods of service beginning in June 1973 and/or February 1982?

(d.) If yes to (c), was the diagnosed left knee disability, to include bipartite patella, clearly and unmistakably not aggravated (i.e., not permanently worsened beyond the natural progression) during or as a result of either period of active duty service?

(e.) If the left knee disability is determined not to have clearly and unmistakably existed prior to service or not to have been clearly and unmistakably aggravated by service or for any other diagnosed left or right knee disability, is it at least as likely as not (a 50 percent or greater probability) that the disability had its onset in, or is otherwise related to the Veteran’s military service, to include kneeling, climbing, performing concrete work, burns to the knees, hyperextension of the left knee, and/or degenerative changes to the left knee?

(f.) Is it at least as likely as not (a 50 percent or greater probability) that a right knee disability had its onset in, or is otherwise related to the Veteran’s military service, to include kneeling, climbing, performing concrete work, or burns to the knees?

A complete rationale for all opinions must be provided. If the clinician cannot provide a requested opinion without resorting to speculation, it must be so stated, and the clinician must provide the reasons why an opinion would require speculation. The clinician must indicate whether there was any further need for information or testing necessary to make a determination. Additionally, the clinician must indicate whether any opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner. 

 

 

M. SORISIO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Patel, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.