Citation Nr: 1806320 
Decision Date: 01/31/18 Archive Date: 02/07/18

DOCKET NO. 12-07 528 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder to include posttraumatic stress disorder (PTSD), major depressive disorder, generalized anxiety, and seasonal affective disorder.


REPRESENTATION

Appellant represented by: John S. Berry, Attorney


ATTORNEY FOR THE BOARD

K. Kleponis, Associate Counsel

INTRODUCTION

The appellant served on active duty for training (ACDUTRA) in the Iowa Air National Guard from January 1983 to June 1983. He also had periods of ACDUTRA and inactive duty training (INACDUTRA) between November 1982 and January 2003. 

This case comes before the Board of Veteran's Appeals (Board) on appeal from a December 2009 rating decision issued by the Department of Veterans' Affairs (VA) Regional Office (RO) in Des Moines, Iowa.

In June 2015 and December 2016, the Board remanded the matter for additional evidentiary development. The Board finds that the AOJ substantially complied with the remand order and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-147 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd Dyment v. Principi, 287 F.3d 1377 (2002). Neither the appellant nor his representative has argued otherwise. In that regard, in November 2017, following completion of the additional development ordered by the Board, the RO provided a Supplemental Statement of the Case to the appellant and his attorney. Neither has responded. 


FINDINGS OF FACT

1. The appellant does not have a medical diagnosis of PTSD.

2. The appellant's current psychiatric disability was not incurred in active service, including his period of ACDUTRA in July 1989 to assist with the clean-up of the July 1989 United Flight 232 crash. 




CONCLUSION OF LAW

The criteria for service connection for a psychiatric disorder, to include PTSD, major depressive disorder, generalized anxiety, and seasonal affective disorder, have not been met. 32 U.S.C. § 503 (2012); 38 U.S.C. §§ 101, 105, 1131, 5107 (2012); 38 C.F.R. §§ 3.1, 3.6, 3.102, 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

When VA receives a complete or substantially complete application for benefits, VA must inform claimants of the information and evidence they are expected to provide, as well as the information and evidence VA will seek to obtain on their behalf. 38 U.S.C. § 5103; 38 C.F.R. § 3.159(b)(1). VA is also required to advise a claimant of the information and evidence not of record that is necessary to substantiate their claim. 38 U.S.C. §§ 5103(a); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). 

VA is also required to make reasonable efforts to help a claimant obtain evidence necessary to substantiate their claim. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159(c). This duty requires the Secretary to assist in obtaining relevant records that the claimant has adequately identified to the VA and to obtain a VA examination or opinion if it is necessary to make a decision on the claim. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159(c). 

Regarding VA's duty to notify, the appellant was notified in a September 2009 letter, prior to the initial decision on the claim, of what evidence was required to substantiate his claim of service connection for a psychiatric condition, what evidence he needed to supply, and what evidence VA would obtain on his behalf. The appellant submitted a signed VCAA acknowledgement letter through counsel in September 2009 along with completed Authorization and Consent to Release Information to the Department of Veterans Affairs (VAF 21-4142) forms and a statement in support of the claim. The Board finds that the notification requirements of 38 U.S.C. §5103 have been met with respect to this claim. 

With respect to its duty to assist, VA has obtained the appellant's service treatment and service personnel records. VA has also obtained the available post-service treatment records which the appellant has specifically identified and authorized VA to obtain, including private treatment records from Mercy Medical, Morningside Clinic, Siouxland Community Health Center, and two private Licensed Independent Social Workers (LISW) that the appellant saw for counselling from 2008 to 2015. VA has also obtained the appellant's records related to his disability claim with the Social Security Administration. The appellant was also afforded three examinations to determine the nature and etiology of his claimed psychiatric conditions. The Board finds that VA's duty to assist with respect to this claim has been met. 

The Board notes that besides general boilerplate citations, the appellant's attorney has raised no objections with VA's duty to notify. In addition, since the RO completed the development ordered by the Board and issued the November 2017 Supplemental Statement of the Case, neither the appellant or his attorney has responded. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument). 


Applicable Law

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty from active military, naval, or air service. 38 U.S.C. § 1131. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that which is pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

The term "active military, naval, or air service" includes: (1) active duty, (2) any period of ACDUTRA during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in the line of duty, and (3) any period of INACDUTRA during which the individual concerned was disabled or died from an injury incurred or aggravated in the line of duty, or from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident occurring during such training. 38 U.S.C. § 101(24); 38 C.F.R. §3.6(a). 

For purposes of service in the National Guard: 1) ACDUTRA means full time duty under section 316, 502, 503, 504, or 505 of Title 32 of the United States Code or other corresponding provisions of law and authorized travel to or from such duty; and 2) INACDUTRA means duty, other than full time duty, under sections 316, 502, 503, 504, or 505 of Title 32 of the United States Code or other corresponding provisions of law. 38 U.S.C. § 101(22), (23); 38 C.F.R. § 3.6 (c), (d).

An injury or disease is incurred "in the line of duty" when the injury or disease occurs at almost any time during a veteran's active service, even while on leave, unless it is shown that the disease or injury was due to the claimant's willful misconduct. 38 U.S.C. § 105; Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009). Federal regulations hold that "a service department finding that injury, disease or death occurred in line of duty will be binding on the Department of Veterans Affairs" except for a few narrow exceptions related to misconduct. 38 C.F.R. § 3.1 (m). 

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f). 

The standard of proof to be applied in a decision on claims for VA benefits is set forth in 38 U.S.C. § 5107(b). Under that provision, VA shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. §5107(b); see also 38 C.F.R. § 3.102. "This unique standard of proof is in keeping with the high esteem in which our nation holds those who have served in the Armed Services. It is in recognition of our debt to our veterans that society has through legislation taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, there is an 'approximate balance of positive and negative evidence.' By tradition and by statute, the benefit of the doubt belongs to the veteran." Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990).

Analysis

The appellant contends that his acquired psychiatric disorder is directly related to his experience with the Iowa Air National Guard assisting with the United Airlines Flight 232 crash clean-up in July 1989. In general, to establish service connection, a Veteran must show (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010).

As a preliminary matter, the Board notes that the appellant has submitted a copy of the orders issued under 32 U.S.C. § 503 assigning him to annual training in order to assist with the clean-up of the July 1989 United Flight 232 crash site. Thus, the Board finds that there is sufficient evidence to conclude that the appellant was on ACDUTRA within the meaning of 38 U.S.C. § 101 at that time. 

Turning to the appellant's contention that he has a psychiatric disorder, the Board finds that the evidence does not establish a diagnosis for PTSD in accordance with the applicable criteria. The Board acknowledges that the appellant's stressor is corroborated by the record. His personnel records establish that he assisted with the crash recovery process. However, the record does not demonstrate a diagnosis in accordance with 38 C.F.R. § 4.125(a). The Board further finds that, while the appellant does have mental health diagnoses of symptoms of depression, anxiety, adjustment disorder, and seasonal affective disorder, the record contains no indication that he became disabled during ACDUTRA and the preponderance of the evidence is against a finding of a causal relationship between the appellant's in-service event of assisting with the crash recovery and those mental health conditions.

The appellant's private treatment records do not indicate a diagnosis of PTSD. The appellant attended counselling sessions with a LISW between January 2008 and July 2015. During that time, the appellant described symptoms of anxiety and depression related primarily to his employment status and family issues. While he is recorded as saying he has PTSD, neither counsellor he attended sessions with made a finding or provided a diagnosis of PTSD for the appellant. While the appellant has made statements that one of his counsellors diagnosed him with PTSD, this is not supported in the appellant's treatment records. This statement is also contradicted by other statements from the appellant discussed below. The Board assigns more probative weight to the objective clinical evidence than to the assertions of the appellant, made in the context of a claim for monetary benefits, particularly given the inconsistencies in his statements. Moreover, neither the appellant nor his attorney has specifically identified any clinical evidence that he has been diagnosed as having PTSD, despite being advised that the record contains no such evidence. The records from the appellant's counselling do, however, contain a diagnosis of depression, anxiety, and seasonal affective disorder. 

During this time, the appellant also received treatment and medication management from Morningside Clinic and Siouxland Community Health Center related to his mental health. These records do not contain any medical diagnosis of PTSD. However, they do establish that the appellant was prescribed, at various times, antidepressant drugs such as Lexapro, Pristiq, and Cymbalta. It is also noted that the appellant was being treated for symptoms of depression and anxiety and received regular screenings for these symptoms. While he is noted on various occasions as dealing with symptoms of depression and anxiety, his treating health care providers at no time made any specific mental health diagnosis, nor did they provide any opinion that his symptoms were related to his time in the Iowa Air National Guard or that the appellant became disabled by a psychiatric disability during ACDUTRA. 

Indeed, in reviewing the appellant's private treatment records, they contain no indication of a link between his service and his current mental health diagnoses. Treatment notes from the appellant's LISWs reveal that the majority of appellant's discussion was focused on employment and family issues. Notes from his treating physicians indicate that he was prescribed his antidepressant medication for the first time after his father had a heart attack in August 2009. It wasn't until after this that the appellant began to mention symptoms relating to Flight 232. Even then, his health care providers did not provide any medical opinion that his symptoms were related to his experiences cleaning up after the crash.

The appellant also underwent a psychiatric examination in relation to his claim for Social Security Disability. At a March 2010 examination, the appellant was found to have depressive disorder, not otherwise specified, with less than a 2 year duration. The appellant was not given a diagnosis of PTSD, although the doctor does note the appellant's statement that he has PTSD. The examiner found that the appellant was anxious and had trouble relaying information in an organized manner. No opinion was given as to the cause of the appellant's depression or anxiety.

The appellant also underwent VA examinations in February 2012, February 2016, and October 2017. All three examinations considered the appellant's claims file and conducted an in-person examination with him. None of these examinations diagnosed the appellant with PTSD. While all three considered the appellant's claim to have PTSD, they clearly state that this has not been confirmed as a medical diagnosis by his treating health care providers. Moreover, even when assuming the appellant had a valid stressor, none of the examiners found enough evidence to support a diagnosis because of a consistent finding at all three examinations, supported by separate objective testing, that the appellant was over endorsing his symptoms. The February 2012 examination was conducted under the DSM IV criteria, while the February 2016 and October 2017 examinations were conducted using the DSM 5 criteria. 

At the appellant's February 2012 examination, the examiner administered a Millon Clinical Multiaxial Inventory-III (MCMI-III) test. The results were found to be invalid because the appellant was over endorsing his symptoms which suggested resistance to the testing procedure or an exaggeration of symptoms. The examiner also found inconsistencies with the appellant's retelling of his involvement in the crash clean up, noting that he described himself at the examination as a first responder to the crash site and that he saw the fireball when the plane crashed but that his orders indicate he was not called in for at least three days after the accident. The appellant's September 2009 statement claimed that he was at his full time job with a private employer, that he heard of the crash on the radio, and that he purposefully avoided answering his phone to avoid getting called in on the day of the accident. 

While the February 2012 examination did find the appellant to have depression, alcohol dependence in remission, adjustment disorder with mixed anxiety and depression, and antisocial personality disorder, the examiner did not attribute these to the appellant's claimed in-service experience assisting in the crash recovery. Rather, the examiner attributed the appellant's depression and adjustment disorder to his employment issues, while the onset of his alcohol dependence and antisocial personality disorder both predated the appellant's in-service event. It was the examiner's opinion that it was not at least as likely as not that the appellant's psychiatric conditions were related to his active service. 

At the appellant's February 2016 examination, he was administered several objective measures of psychological functioning. See VA Legacy Content Manager for full opinion and addendum. The examiner found that the testing indicated "significant over reporting of symptoms not consistent with the Veteran's observed behaviors," which suggested "some attempt at impression management and renders the data invalid/uninterpretable." In an addendum to the opinion, it was noted that "on formal testing, the appellant produced a profile suggestive of significant over reporting of symptoms, to the degree that testing cannot be interpreted."

While the examiner found that the appellant's records contain evidence that he has claimed a PTSD diagnosis, and endorsed symptoms that meet the criteria, the examiner noted that this diagnosis is not supported by the claims file. Further, the examiner stated that the appellant was "frequently vague and contradicted himself in regards to symptom presentation." An addendum to the opinion expanded on this point, citing the appellant's statement that he has less interest in social activities and feelings of detachment but later said he was very active in his local AA chapter, including in organizing and attending events, and that he has supportive relationships with family, friends, other AA members, and church members. 

The appellant's February 2016 examination also notes a prior diagnosis of Major Depressive Disorder. However, the examiner found the presentation of these symptoms to be strongly related to job loss and financial stressors. Finding the appellant's symptoms infrequent and stable on current medication, the examiner opined that the appellant's depressive disorder is due to situational stressors, and is less likely than not due to, or first incurred during his military service.

The appellant was also examined in October 2017. At that examination, he was administered the Minnesota Multiphasic Inventory, 2nd edition (MMPI-2), which, as the examiner explained, has measures built into the test to detect inconsistency in response and over-endorsement of symptoms. In reviewing the appellant's results, the examiner found that "embedded measures strongly suggest the Veteran is over-endorsing symptoms." The examiner went on to say that the appellant endorsed a number of symptoms that, if truly present, would have rendered the appellant acutely psychotic and untestable, and which are inconsistent with his level of functioning. The examiner deemed the appellant's endorsed symptoms to be an exaggeration. 

Turning to the issue of PTSD, the examiner found that the evidence did not support a diagnosis of PTSD. The examiner notes that the appellant had stated that he self-diagnosed himself by comparing his emotional reaction to assisting with the Flight 232 crash clean up with stories from relatives who served in combat. The examiner noted that the appellant did not endorse many of the symptoms associated with PTSD including avoidance, negative alterations in mood or cognition, or marked alterations in arousal or reactivity. The examiner also considered an affidavit the appellant submitted in February 2016. The examiner concluded that this affidavit was completely inconsistent with the information provided by the appellant at his examination. 

Based on all of this, and a particular review of the appellant's prior VA examinations, the October 2017 examination found that no mental health diagnosis related to service could be supported for the appellant. Particular emphasis was placed on the appellant's history of over endorsing his symptoms and that his private treatment records focus "overwhelmingly" on employment and marital issues. The examiner further noted the lack of records that would "support the Veteran's claim of PTSD, a Trauma based diagnosis, or other mental health condition through a military nexus." 

When considering the results of the examinations in light of 38 C.F.R. 3.304(f), the Board must assign the greatest probative weight to the February 2012 examination. As the appellant's case was certified to the Board prior to August 2014, the determination of PTSD in the appellant's case must be completed under the DSM IV. However, findings from the February 2016 and October 2017 examination bolster and confirm the findings of the February 2012 examination, particularly as they relate to the appellant's consistent pattern of over endorsing his psychiatric symptoms. Further, they reinforce the opinion that the appellant's other psychiatric diagnoses are not related to his claimed in-service event, but are instead related to his employment and family situation. 

The Board acknowledges and has considered the appellant's contention that he suffers from a psychiatric disorder, to include PTSD, depression, anxiety, and seasonal affective disorder, as related to his experience assisting with the clean up after the United Airlines Flight 232 crash. In this, the Board has considered the appellant's February 2016 affidavit, his statements in support of his claim, and his statements to his health care providers. While the appellant is competent to provide testimony about his symptoms and state that another examiner has diagnosed him as having PTSD, he is not competent to provide medical diagnoses himself, as they involve a complex medical process not subject to lay observation. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). Questions of competency notwithstanding, the Board finds that his statements are lacking in credibility. In considering his statements, the Board notes the inconsistencies cited in the February 2016 and October 2017 examinations. While the appellant has endorsed many of the symptoms associated with PTSD, such as avoidance and hyper vigilance, the appellant has not been consistent in relaying these symptoms. Further, objective testing has found him to have over endorsed these symptoms, suggesting exaggeration. The Board therefore affords them only low probative value.

Although in some cases a layperson is competent to offer an opinion addressing the etiology of a disorder, the Board finds that, in this case, the determination of the existence, nature, and cause of the appellant's claimed psychiatric conditions is a medical question not subject to lay expertise. See Jandreua v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). These conditions involve pathological processes that are not readily observable to a layperson. 38 C.F.R. § 3.304(f) also requires that a diagnosis of PTSD require medical evidence diagnosing the condition. The Board finds that in light of the non-observable nature of the pathology of the appellant's claimed psychiatric disorders, the issue of the origin of the appellant's psychiatric condition is a question requiring medical training, expertise, and experience. Therefore, the Board finds that the medical opinions and objective testing provided in the February 2012, February 2016, and October 2017 examinations outweigh the appellant's lay opinion and statements regarding his symptoms. King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012).

Thus, the Board finds the preponderance of the evidence is against service connection for a psychiatric condition to include PTSD, depression, anxiety, adjustment disorder, and seasonal affective disorder. Gilbert, 1 Vet. App. at 54. 

In reaching this decision, the Board has considered the clinical evidence showing diagnoses of alcohol dependence and antisocial personality disorder. To the extent that the appellant may be seeking service connection for a psychiatric disability due to or manifested by alcohol abuse, Section 8052 of the Omnibus Budget Reconciliation Act (OBRA) of 1990, Pub. L. No. 101-508, § 8052, 104 Stat. 1388, 1388- 91, prohibits payment of compensation for a disability that is a result of a Veteran's own alcohol or drug abuse. See also 38 U.S.C. § 105(a) (2012); 38 C.F.R. §§ 3.1(m), 3.301(d) (2017) (providing that an injury or disease incurred during active service will not be deemed to have been incurred in line of duty if the injury or disease was a result of the person's own willful misconduct, including abuse of alcohol or drugs. Thus, service connection for the appellant's alcohol dependence is not warranted. 

The Board has also considered the diagnosis of antisocial personality disorder. As set forth above, service connection is granted disability resulting from disease or injury incurred in the line of duty. 38 U.S.C. § 1131. Personality disorders, however, are not diseases or injuries within the meaning of applicable legislation providing VA compensation benefits. 38 C.F.R. §§ 3.303(c), 4.9, 4.127 (2017); see also Winn v. Brown, 8 Vet. App. 510, 516 (1996); Beno v. Principi, 3 Vet. App. 439 (1992) (holding that personality disorders are developmental in nature, and, therefore, not entitled to service connection); see also 61 Fed. Reg. 52,695-98 (Oct. 8, 1996) (regulatory history providing that personality disorders are not diseases or injuries for VA compensation purposes). There is no basis on which to award service connection for a personality disorder in this case. 


ORDER

Entitlement to service connection for a psychiatric disorder, to include PTSD, major depressive disorder, generalized anxiety, alcohol dependence in remission, adjustment disorder, antisocial personality disorder, and seasonal affective disorder, is denied.




____________________________________________
K. Conner
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs